[Civ. No. 2896. Third Appellate District.—July 28, 1925.]

RUTH JONES, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF RAILROAD EMPLOYEE—ABSENCE OF WARNING SIGNS—ACTION FOR DAMAGES—CONFLICTING EVIDENCE—VERDICT.—In this action for damages for the death of a track laborer while engaged in repairing a railroad crossing maintained by his employer, a traction company, and defendant railroad company, as the result of the alleged negligence of the defendant railroad company in the operation of one of its freight trains, the testimony introduced on behalf of plaintiff was sufficient to raise a conflict, as against the testimony of the train crew, upon the question of whether warning of the approach of the train was given, and presented a question for the jury's determination, and was sufficient, if believed, to justify the inference that no bell was rung or signal given.

[2] ID.—FAILURE TO GIVE SIGNALS—NEGATIVE TESTIMONY—VERDICT.— In such an action, the negative testimony of witnesses who were

---

2. Weight of negative evidence, note, 12 **Ann. Cas.** 1034. See, also, 10 **Cal. Jur.** 1159; 10 **R. C. L.** 1011.

in a position to hear and observe, who declare they heard no signals and saw none, even as opposed to positive testimony that signals were given, presents a question to be submitted to the jury, and such negative evidence may be sufficient to sustain a verdict.

[3] ID.—FAILURE TO MAINTAIN LOOKOUT—EVIDENCE—INFERRED NEGLIGENCE.—In such action, defendant railroad company's negligence having also been predicated upon the alleged failure of the enginemen to maintain a lookout as they passed over the crossing where the deceased was working, and the testimony of the engineer and fireman having disclosed that they observed many persons, presumably section laborers, along and close to the tracks, but did not see the deceased at work at the intersection of the tracks and did not know of the happening of the accident until after they had brought the train to a standstill, after receiving stop signals, about 1,700 feet beyond the intersection, and the day having been a bright, clear day, the jury may well have inferred negligence on the part of the men in charge of the operation of the train.

[4] ID.—USE OF ORDINARY CARE FOR OWN SAFETY—PRESUMPTION.—In such action, the presumption is that the deceased used ordinary care for his own safety.

[5] ID.—STOP, LOOK AND LISTEN RULE—APPLICATION TO SECTION LABORERS.—The common "stop look and listen" rule applicable to travelers and to railroad employees not engaged in the duties of their employment cannot apply to persons lawfully engaged at work repairing an intersection of railroads.

[6] ID.—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.—Questions of negligence and contributory negligence are for the jury.

[7] ID.—NEGLIGENT OPERATION OF TRAINS—FAILURE TO GIVE WARNING SIGNALS.—Under section 486 of the Civil Code, all persons at or near railway crossings, not. excluding employees or invitees, rightfully engaged in repairing tracks, are entitled to warning signals, a failure to give which constitutes one kind of negligent operation of trains.

[8] ID.—RECIPROCAL DUTIES OF RAILROAD COMPANY AND TRACK REPAIRMAN.—While a person engaged in repairing tracks must use reasonable, ordinary care and cannot recover for injuries due to his own negligence, the duty of a railroad company operating trains over such tracks is a reciprocal duty, resting upon the railroad company to use reasonable, ordinary care by means of such proper and adequate warnings and signals as will reasonably

---

4.   See 8 Cal. Jur. 997.
6.   See 19 Cal. Jur. 719, 735; 20 R. C. L. 166.
7.   See 22 Cal. Jur. 325.

be adequate to avoid injury to persons lawfully employed upon the tracks. The status of such persons is not that of a mere licensee, nor of a trespasser, but analogous at least to that of an invitee.

[9] ID.—LEADING AND SUGGESTIVE QUESTIONS—ERROR WITHOUT PREJUDICE.—In this action for damages for the death of a track laborer while engaged in repairing a railroad crossing maintained by his employer, a traction company, and defendant railroad company, as the result of the alleged negligence of the defendant railroad company in the operation of one of its freight trains, conceding that the action of the trial court in overruling defendant's objections to certain questions, as being leading and suggestive, was erroneous, it was impossible to deduce that such rulings were prejudicial to defendant.

[10] ID.—STRIKING OUT PORTION OF ANSWER—IRRELEVANT PLEADING.— In such action, the error, if any, of the trial court in striking out a portion of the answer of defendant without notice, could not have resulted in substantial injury to defendant, where the portion stricken out might not ordinarily have been relevant or admissible in evidence.

[11] ID.—PASSING OF PEREMPTORY CHALLENGE—SUBSEQUENT EXERCISE DISCRETION.—In such an action, in the absence of a showing of abuse of discretion, it is not error to permit the plaintiff to pass her peremptory challenge to the jurors and later exercise such peremptory challenge.

[12] ID.—APPEARANCE OF DECEASED—EXTENT OF INJURIES—RELEVANT EVIDENCE.—In such action, the appearance of the deceased during the time he was alive in the hospital was material as bearing on the nature, extent and severity of his injuries which resulted in his death, and objections to the relatives of the deceased testifying to his appearance and bodily health were properly overruled, as were the objections to the witness testifying as to the appearance of the deceased at various times and places prior to the accident and after the accident while in the hospital.

[13] ID.—EVIDENCE—INSTRUCTIONS TO REPAIR CROSSING.—In this action for damages for the death of a track laborer while engaged in repairing a railroad crossing maintained by his employer, a traction company, and defendant railroad company, as the result of the alleged negligence of the defendant railroad company in the operation of one of its freight trains, the trial court did not err in admitting in evidence a certain letter from the superintendent of the defendant railroad company to the traction company by which deceased was employed, and wherein the traction company was told that the crossing in question was out of line, and the writer stated that he hoped the traction company could arrange to have their forces drive the crossing into line, as it was

important to show the reason for the presence of the deceased upon the crossing; and the fact that no written answer was sent was of no importance, where no written reply was requested and there was nothing in the letter to indicate one was expected.

[14] ID.—ORDINARY CARE—ERRONEOUS INSTRUCTION.—In such action, the trial court properly refused defendant's requested instruction "that ordinary care is that degree of care which an ordinarily prudent person, situated as the decedent . . . was, as shown by the evidence and circumstances, at or about the time of the accident, would usually exercise for his own safety," as it was an instruction upon fact and was not accurate as a definition, because of the use of the word "usually," instead of the word "ordinarily" or "reasonably," in the last line.

[15] ID.—MEASURE OF DAMAGES—DUPLICATED INSTRUCTIONS.—In such action, the trial court did not commit error in refusing one of defendant's requested instructions on the measure of damages, where the subject of the instruction was fully covered in another of defendant's instructions, which was given.

[16] ID.—INSTRUCTIONS—SPECULATIVE REFERENCE TO DEPENDENCY.—In such action, the trial court did not commit error in refusing one of defendant's requested instructions on the measure of damage, where such instruction, in so far as it correctly stated the law, was fully covered by other instructions given, and the remainder of the instruction contained speculative references whether or not the deceased "might have, through age or sickness, been likely to become wholly or partially dependent for support upon the plaintiffs."

[17] ID. — CONTRIBUTORY NEGLIGENCE — ERRONEOUS INSTRUCTION. — In such action, in order to bar a recovery, the deceased must have "negligently" contributed to the happening of the accident; and defendant's requested instruction that "If you believe, from the evidence, that the deceased . . . in any manner contributed to the accident which resulted in his death, and for which this suit has been brought, then I charge you that you must find a verdict for the defendant," was clearly not the law, and was properly refused.

[18] ID.—FAILURE TO USE ORDINARY CARE—INSTRUCTION ON MATTERS OF FACT.—In such action, defendant's requested instruction "that it appears from the evidence in this case that the deceased . . . was guilty of conduct amounting to negligence and lack of ordinary care, which conduct was a contributing and proximate cause of his death, and that, therefore, your verdict should be for the defendant," directed the jury as to matters of fact, and was properly refused.

15.  See 24 Cal. Jur. 806; 14 R. C. L. 751.

[19] ID.—DUTY TO RING BELL—ERRONEOUS INSTRUCTION.—In such action, the court properly refused defendant's requested instruction that "In another part of these instructions you are advised as to the law of this state regarding the duty of a railroad company to provide and sound bells or whistles when approaching a highway crossing, this instruction is to advise you that it is not necessary that both the whistle be sounded and the bell rung. If either the whistle is sounded or the bell rung, as required by law in approaching the crossing, the duty of the railroad company is performed," as section 486 of the Civil Code requires the ringing of the bell within the corporate limits of a city, at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and to be kept ringing until it has crossed such street, road or highway, and there is no requirement that the whistle be sounded in cities, although there is no law forbidding that to be done.

[20] ID.—DUTY TO MAINTAIN SIGNAL—DUPLICATED INSTRUCTIONS.—In such action, it was not error to refuse defendant's requested instruction "that it was not the legal duty of the defendant . . . at, or immediately before, the time of the accident sued for in this action, to have maintained any automatic, or other signal at, or near, the point of said accident, and you are instructed that you cannot find a verdict in favor of the plaintiffs, or either, or any, of them, because of such absence of any such automatic, or other signal," where another instruction given fully covered the same subject matter.

[21] ID.—LAST CLEAR CHANCE—EVIDENCE—INSTRUCTIONS.—In such action, the trial court did not commit error in refusing defendant's requested instruction upon the subject of the law of the last clear chance, where no facts were presented to bring the case within the rule of the last clear chance.

[22] ID.—WEIGHT OF EVIDENCE—PROVINCE OF JURY—INSTRUCTIONS.—In such an action, it is the sole province of the jury to determine the weight of the evidence, and, therefore, an instruction "that where the evidence is conflicting as to whether the whistle was blown or not and whether the bell was rung or not, and there is affirmative testimony that the whistle was blown and that the bell was rung, and negative testimony of other witnesses that they did not hear it, the affirmative evidence of the fact that the whistle was blown and that the bell was rung should overcome the negative evidence that the whistle was not blown and that the bell was not rung. And that testimony of the witnesses that they did not hear the whistle blown or the bell rung is not positive evidence that the whistle was not blown or that the bell was not rung," is properly refused.

[23] ID.—FAILURE TO GIVE CROSSING SIGNALS—PROTECTION OF RAILROAD EMPLOYEES—ERRONEOUS INSTRUCTION.—Crossing signals un-

der our law are intended for the benefit of anybody who may be on or approaching a crossing, and does not except or exclude persons rightfully at work upon or along or near a railroad crossing; and, therefore, it was not error in this action to refuse defendant's requested instruction that "Crossing signals are not intended, or required, for the benefit of section men at work upon, or along, the track or near a crossing, and the failure to give such signals is not negligence as to such section men thus engaged."

[24] Id.—Duty of Section-man to Protect Self—Instructions—Erroneous Assumption.—A section-man must use reasonable, ordinary care to protect himself, and the question of whether or not he exercised reasonable and ordinary care and watchfulness is a question for the jury to determine; and a requested instruction that "Railroad companies in the operation of their trains, may rightfully assume that section men, while at work, upon, or along, the track, will look out for the approach and passage of trains at all times, and ordinarily such railroad companies owe to section men no duty to warn them of the approach of trains," erroneously assumes it to be the duty of any section-man at all times to look out for the approach and passage of trains, and is properly refused.

[25] Id.—Knowledge That Trains Likely to Pass—Erroneous Instructions.—In such action, defendant's requested instruction that "A person working on, or along, a railroad track, where cars, or trains, are passing, or likely to pass at short intervals, while in a position to be endangered by such trains, must pay attention to his surroundings, and he must employ his natural faculties, and exert due diligence to avoid such dangers; he must look and listen to ascertain whether danger is threatened by his situation, and his failure to do so constitutes absolute negligence as a matter of law," erroneously assumed that the deceased knew trains were likely to pass at short intervals, and was properly refused.

[26] Id.—Warning to Deceased—Contributory Negligence—Erroneous Instructions.—In such action, defendant's requested instruction that "If you believe, from a preponderance of the evidence in this case, that the deceased . . . had been warned by the foreman of the section-men with whom he was working, to look out for the trains of the defendant . . . and that his failure to heed such warning, proximately contributed to his death, then your verdict should be for the defendant," was properly refused, because it clearly implied, as a matter of fact, that the deceased failed to heed the warning of the foreman, and that his failure contributed to his death.

[27] Id.—"Approximate" Cause of Accident—Erroneous Instructions.—In such action, defendant's requested instruction that "If you believe, from the evidence, that the deceased . . . was careless or negligent, and that his neglect contributed approximately

to the accident resulting in his death, the plaintiff cannot recover, even though you should believe from the evidence, that the defendant . . . negligently omitted to give warning of the approach of its train by blowing the whistle or ringing the bell," was erroneous because of the use of the word "approximately" instead of "proximately."

[28] ID.—TRACK AS SIGNAL OF DANGER—PRESUMPTION OF NEGLIGENCE —ERRONEOUS INSTRUCTIONS.—In such action, a requested instruction that "The railroad track of a steam railway must itself be regarded as a signal of danger, and one working upon or along said railroad track must avail himself of every opportunity to look and listen for approaching trains. If . . . [the deceased], taking these precautions, would have seen or heard the approaching trains, the very fact of his injury and death will raise the presumption that he did not take the required precautions," does not embody a correct statement of the law, and is properly refused.

[29] ID.—FAILURE TO GIVE WARNING SIGNAL—BELIEF OF DECEASED— INSTRUCTION ON MATTER OF FACT.—In such action, defendant's requested instruction that "If you should believe, from a preponderance of the evidence that no whistle was sounded, and no bell was rung, on the train of the defendant, . . . these circumstances did not excuse the deceased . . . from looking and listening while working upon, or along, the railroad track of the defendant, . . . And if you believe that the deceased . . . relied upon his belief that he did not hear any whistle or any bell, and, therefore, he did not remove from the place at which he was working on, or along the railroad track of the defendant, . . . and by reason thereof he was injured, which injuries resulted in his death, the plaintiffs cannot recover any damages, and your verdict must be for the defendant," would have told the jury as a matter of fact that the deceased did not look and listen for trains at all, and was properly refused.

[30] ID.—FAILURE TO SOUND WHISTLE OR RING BELL—DUTY OF DECEASED TO TAKE ORDINARY PRECAUTIONS—INSTRUCTIONS—INVASION OF PROVINCE OF JURY.—In such action, defendant's requested instruction that "The failure of the engineer to sound the whistle or ring the bell, if you find from the preponderance of the evidence in this case that such was the fact, did not relieve . . . [the deceased] from the necessity of taking ordinary precautions for his own safety. Negligence of the railroad employees in such particulars, if any you find, was no excuse for negligence on the part of said decedent. He was bound to exercise all of his own senses and faculties to avoid being struck by any approaching train and not to remain carelessly in a place of danger," invaded the domain of fact and would have told the jury that the deceased

remained carelessly in the place of danger, and was guilty of negligence, and such instruction was properly refused.

[31] Id.—Ability to Observe Approach of Train—Contributory Negligence—Instruction upon Matters of Fact—Absence of Essential Facts.—In such action, defendant's requested instruction that "Assuming that the duty of the defendant . . . was to anticipate that a person might be working upon, or along its railroad track, there was also a duty on the part of the deceased . . . to exercise reasonable and ordinary care while working upon or along the railroad track of the defendant . . . ; and if you believe, from the evidence, that the deceased . . . ; if he had used his eyes and ears while working upon or along said track, and before he was struck by the engine or cars, could have observed the approach of the train on the track, and so have avoided the accident, his failure to exercise such care, and thus to make use of his eyes and ears, is contributory negligence, and in such event your verdict must be for the defendant," was properly refused because it invaded the province of the jury by instructing, impliedly at least, upon matters of fact, and was hypothetically argumentative, without including all qualifying facts essential.

[32] Id.—Duty of Track Laborer to Look and Listen—Instruction upon Matter of Fact.—In such action, defendant's requested instruction "that it is the duty of a person working on, or along, a railroad track, over, upon and along which locomotives and trains of cars frequently cross and pass over, to look and listen for coming trains. It is his duty to use all of his faculties, and it is not enough if he merely listens believing that the people in charge of any approaching engine will ring a bell or sound a whistle," was properly refused, as it instructed the jury upon a matter of fact, because of the implication therein that the deceased did not use all of his faculties, but merely listened and did not look.

[33] Id.—Contributory Negligence — Duplicate Instructions. — In such action, the subject matter of defendant's requested instruction that "If, after having heard all of the evidence in this case, you should believe, from the evidence, that the deceased . . . was negligent, and that this negligence proximately contributed to his death, and you should also believe from a preponderance of the evidence in this case, that the defendant . . . was negligent, then I instruct you that in such an event, your verdict must be for the defendant," was fully covered in another instruction requested by defendant, and which was given, and such instruction was properly refused.

[34] Id.—Credibility of Particular Witnesses—Instructions.—In such action, defendant's requested instruction that "You have no right to, and cannot, disregard the testimony of the witnesses

74 Cal. App.—2

who were in charge of the train of the defendant . . . at the time of the accident, simply because they were, or now are, in the employ of the defendant . . . and you cannot reject their testimony, or the testimony of either of them, neither can you view their testimony, nor the testimony of either of them, with suspicion, unless it has appeared to your satisfaction, from their manner of testifying, or by other satisfactory and sufficient evidence, that they have not testified truthfully," was properly refused, because the jury was fully instructed in other instructions upon the credibility of witnesses, and neither party was entitled to have instructions as to the credibility of particular witnesses.

[35] ID. — DUTY TO BLOW WHISTLE — INCOMPLETE INSTRUCTION. — In such action, defendant's requested instruction "that a railroad company is not required to blow the whistle on its engine while approaching crossings, or otherwise, within the corporate limits of a city, and if you believe from the evidence in this case that the accident for which this suit has been brought occurred within the corporate limits of" a named city, "then I instruct you that there was no obligation or duty on the part of the defendant . . . to blow its whistle on said locomotive approaching the crossing where the accident occurred," contained only a part of the rule of section 486 of the Civil Code, and was not sufficiently qualified, and its refusal was not prejudicial.

---

(1) 33 **Cyc.**, p. 890, n. 57, p. 900, n. 22.    (2) 23 **C. J.**, p. 44, n. 92, p. 45, n. 94, 96, 99.    (3) 33 **Cyc.**, p. 887, n. 37, p. 890, n. 56.    (4) 17 **C. J.**, p. 1304, n. 77; 33 **Cyc.**, p. 890, n. 58.    (5) 33 **Cyc.**, p. 833, n. 32.    (6) 29 **Cyc.**, p. 635, n. 68, p. 640, n. 13.    (7) 33 **Cyc.**, p. 785, n. 58.    (8) 33 **Cyc.**, p. 764, n. 45, p. 765, n. 46, p. 846, n. 20.    (9) 4 **C. J.**, p. 967, n. 17.    (10) 4 **C. J.**, p. 1005, n. 68.    (11) 35 **C. J.**, p. 417, n. 10.    (12) 17 **C. J.**, p. 1354, n. 47, p. 1361, n. 21.    (13) 22 **C. J.**, p. 905, n. 50.    (14) 29 **Cyc.**, p. 650, n. 90; 33 **Cyc.**, p. 913, n. 2; 38 **Cyc.**, p. 1657, n. 53.    (15) 33 **Cyc.**, p. 913, n. 92; 38 **Cyc.**, p. 913, n. 92; 38 **Cyc.**, p. 1717, n. 24.    (16) 38 **Cyc.**, p. 1601, n. 52, p. 1711, n. 19.    (17) 33 **Cyc.**, p. 916, n. 14.    (18) 33 **Cyc.**, p. 916, n. 23, 24.    (19) 33 **Cyc.**, p. 783, n. 48, p. 910, n. 79.    (20) 33 **Cyc.**, p. 1137, n. 23.    (21) 33 **Cyc.**, p. 916, n. 19.    (22) 38 **Cyc.**, p. 1516, n. 57, p. 1649, n. 36.    (23) 33 **Cyc.**, p. 910, n. 79.    (24) 33 **Cyc.**, p. 846, n. 20, p. 908, n. 63.    (25) 33 **Cyc.**, p. 913, n. 2.    (26) 33 **Cyc.**, p. 917, n. 23.    (27) 4 **C. J.**, p. 1465, n. 19; 33 **Cyc.**, p. 916, n. 14.    (28) 33 **Cyc.**, p. 916, n. 14.    (29) 33 **Cyc.**, p. 917, n. 23.    (30) 33 **Cyc.**, p. 917, n. 23.    (31) 33 **Cyc.**, p. 917, n. 21.    (32) 33 **Cyc.**, p. 917, n. 23.    (33) 33 **Cyc.**, p. 913, n. 92.    (34) 33 **Cyc.**, p. 913, n. 92; 38 **Cyc.**, p. 1725, n. 96, p. 1726, n. 1.    (35) 33 **Cyc.**, p. 910, n. 79.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Levinsky & Jones for Appellant.

Cooley & Crowley and Cooley & Gallagher for Respondent.

McDANIEL, J., *pro tem.*—The plaintiff Ruth Jones, widow of B. B. Jones, deceased, and the mother of the plaintiffs Virginia Jones, Nannie Stevens and Mrs. Fletcher Stevens, prosecutes this action against the Southern Pacific Company, a corporation. Walter W. Webb and Charles P. Alexander, respectively, fireman and locomotive engineer on extra freight No. 2327, also are defendants, but were not served with summons, this action, therefore, being against the Southern Pacific Company alone, to recover damages for the death of said B. B. Jones, alleged to have been occasioned by the negligence of defendant on the fourth day of August, 1921, at the city of Lodi, California. Jones was a track laborer in the employ of the Central California Traction Company, a corporation, but working on the tracks of the appellant. Before submission, the cause was abandoned by the plaintiffs Virginia Jones, Nannie Stevens and Mrs. Fletcher Stevens, and dismissed as to them by order of court. (Code Civ. Proc., sec. 581, subd. 4.)

The jury returned a general verdict, in the sum of $10,000, for the plaintiff Ruth Jones against the Southern Pacific Company, appellant herein, and also returned answers upon submitted special issues, the first six of which having been requested by the plaintiff and the remaining six by the defendant. Those special issues and answers were found and returned, over the signature of the foreman, as follows:

No. 1. Was the manner of operating the freight train involved in the accident careless and negligent? Ans. Yes.

No. 2. Was the death of B. B. Jones caused by the careless and negligent operation of the freight train involved in the action? Ans. Yes.

No. 3. Did the engineer in charge of the engine keep such a lookout as would be kept by an ordinarily prudent man, under the same circumstances, while traveling from the water-tank to the crossing at East Lodi Avenue, in the city of Lodi? Ans. No.

No. 4. Did B. B. Jones come to his death by reason of any negligent act or omission on the part of the engineer? Ans. Yes.

No. 5. Did the fireman in the engine involved in the accident keep such a lookout. as would be kept by an ordinarily prudent man under the same circumstances, while traveling from the water-tank to the crossing at East Lodi Avenue, in the city of Lodi? Ans. No.

No. 6. Did B. B. Jones come to his- death by reason of any negligent act or omission on the part of the fireman? Ans. Yes.

No. 7. Was the defendant Southern Pacific Company, as to B. B. Jones, negligent in failing to maintain an automatic, or other signal, at, or near, the point of the accident complained of? Ans. No.

No. 8. Was the defendant Southern Pacific Company, as to decedent B. B. Jones, negligent in failing to keep or maintain a flagman or watchman at the crossing where the accident complained of occurred at the time of said accident? Ans. No.

No. 9. A. Was the locomotive as to which plaintiff's charge defendant with negligent operation equipped with a bell, as defined in the instructions I have given? · B. Was that bell rung at a distance of at least eighty rods from the place where the Southern Pacific Company's Railroad crossed the highway on, or near, which B. B. Jones was killed? C. Was it kept ringing until it crossed said crossing? Ans. A. Yes. Ans. B. No. Ans. C. No.

No. 10. Did the decedent B. B. Jones use ordinary care in looking out for the approach of the locomotive and train which it is alleged caused his death? Ans. Yes.

No. 11. Was the decedent B. B. Jones warned by his foreman to look out for trains using the tracks on or near the point where B. B. Jones was working? Ans. Yes.

No. 12. Was there anything that would have prevented the deceased, B. B. Jones, from seeing the approaching

train, if he had looked in the direction from which the train was coming? Ans. No.

The evidence is before us in a bill of exceptions with 139 specifications of error. Counsel for appellant, even in the amplitude of indefatigable industry, has not argued every specification. We have examined all of them, however.

The railroad track of the Southern Pacific Company is located on Sacramento Street in the city of Lodi. The street and track extend in a northerly and southerly direction. Lodi Avenue crosses Sacramento Street at right angles, and upon it are located car tracks of the Central California Traction Company. This railroad crossing is a public street crossing within the corporate limits of the city of Lodi. It appears to be the duty of the traction company to keep the intersection in repair at its own expense, subject to the rights of the Southern Pacific Company.

On July 30, 1921, the superintendent of the Southern Pacific Company, G. E. Gaylord, sent a letter to the Central California Traction Company, for the attention particularly of J. J. Hooper, its superintendent; a copy is as follows (letter heading omitted):

"Attention Mr. Hooper:

"Gentlemen:

"Crossing at Lodi Avenue, our main line, Lodi, so badly out of line, considered necessary this afternoon to place 8 mile slow order over same. Hope you can arrange to have your forces drive this crossing into line, calling upon my section forces at Lodi for such assistance as they may be able to render you.

"Yours truly,
"G. E. GAYLORD."

This notification seems never to have been replied to in writing, but on August 4, 1921, the Central California Traction Company sent its gang of workmen under section foreman H. H. Woodside to said crossing to do the work as directed in the notification. They had been working at the crossing or the immediate vicinity about two hours before the accident mentioned in the complaint. B. B. Jones, a member of that section-gang, had worked as such for Central California Traction Company about three

months. The entire crew, including Jones, after working at that place a while, was sent to other points along the track nearby, when Jones, by order of the foreman, returned to the intersection to continue work at that point.

From the crossing looking south one's view of the track is unobstructed for two miles or more except when trains may be passing thereon, and one on an approaching engine has an unobstructed view of the crossing and anyone upon it, a like distance.

Mr. Woodside, the section-foreman, testified that on that morning he had warned all of the section-men, including the deceased, saying: "Whatever you do, look out for those trains," and, further, that he had repeated this two or three times the same morning. That admonition expressed the duty of every ordinarily prudent person in such a place to exercise reasonable care for his own safety.

Jones was a man sixty-five years and six months of age, in sound health and of normal faculties, and the evidence did not disclose he had defect either of vision or hearing. The particular work he was doing when the accident occurred was digging with pick and shovel a jackhole under one of the track rails to prepare a foundation for a track-lifting implement.

While so at work, in a stooping position, with his back toward the rails and the approaching train, his hearing probably affected by sounds of other near-by moving trains, he was struck by the freight train of defendant, receiving injuries from which he died, one leg being almost amputated by the wheels of the train, and his skull fractured. A witness stated that he observed the iron step of several of the passing cars strike Jones upon the head as the latter, after being run down, tried to raise himself from the ground.

Shortly before the fatality the train, not running on regular schedule, was stopped at a water-tank situated on the main line 1,534 feet south of the point of accident. It remained there for approximately ten minutes, then proceeded on its northbound journey (eastbound in railroad parlance) at a speed of six or eight miles per hour to and past the point of accident. The time occupied in traveling the distance from the water-tank to the crossing

might have been a minimum of two minutes and fifteen seconds, or a maximum of four minutes.

There is a conflict in the testimony as to whether or not any whistle was sounded or bell rung as the train left the water-tank and approached the crossing. This conflict will be fully examined.

Both appellant and respondent in argument agree that under the facts no features are presented to bring this case within the rule of the last clear chance. It will be unnecessary, therefore, to pay any attention to that rule. It is conceded that Jones did not see the train immediately before it ran upon him; and that neither the engineer nor the fireman observed Jones at the crossing during any time while the engine traveled from the water-tank to the intersection.

Appellant earnestly contends it was in nowise guilty of negligence in the operation of the train, or in causing the injuries to the deceased; but that his death was directly and proximately due to his negligence in failing to exercise ordinary care for his own safety; that if appellant was negligent in any manner or at all, nevertheless his death was directly and proximately due to his contributory negligence.

Respondent argues that appellant was guilty of negligent operation of its train, resting the argument partly upon the charge that signals were not given, as required by section 486 of the Civil Code.

Defendant's fireman, engineer and brakemen testified that the whistle was sounded a number of times, and a bell of the requisite weight was automatically ringing from the time the train left the water-tank until it passed the crossing and intersection at Lodi Avenue.

About the time of the accident, there were switch-engines and trains of the Southern Pacific Company being operated and worked in the yards of said company at Lodi; the said yards extending on the east side of the main track both north and south of the crossing, wherein are four so-called house tracks, upon which, at the time, the Central California Traction Company also was moving cars.

Jones was not working within the train-yard itself, but on the main line track, which bounds the west side of the

switch-yard, and the train which struck him was a through freight, bound east.

Opposing the testimony of the trainmen as to signals, the witness T. P. Trick testified in part as follows (bill of exceptions, fol. 451) : "Q. Did you hear anything prior to the time you noticed the train? A. The reason we looked, we heard the train noise, and then we looked around, and then we seen the train. I didn't hear anything else; I didn't hear any noise of any kind before I saw the train, except the train noise, and didn't hear any other noise of any kind made by that train within two minutes of the time I first saw the train. . . . (Fol. 453.) What I mean by the train noise was, you always hear noise when the train goes by, feel it or hear it when it is so close and I heard nothing else. (Fol. 459.) When we worked there we pay attention to our work and to nothing else. There was no steam coming out of the engine on the side I was on. . . . (Fol. 466.) When I stated that all the freight trains that passed that crossing made the same noise, I referred to the noise that it makes when it passes a crossing by the cars. I didn't mean that I didn't pay any attention to anything else except that work."

This witness testified he was at the Traction depot, about 100 or 120 feet from the crossing at the time of the accident.

The witness A. D. Buller, who was 25 or 50 feet from the crossing when the accident occurred, testified (fol. 490) : "The noise the train was making was just the noise the wheels will make when they run over the track, wheels— railroad car (fol. 491) wheels will make a noise when they run on the track, that is the only noise I heard. Q. Did the engine make any other noise? A. No, sir. (Fol. 492) Q. . . . During the time you were walking from the place where you first saw Mr. Jones, did you hear the engine of the train make any noise other than that noise which you say was made by the wheels on the track? A. No, sir."

It appears to have been understood at the trial that the foregoing evidence was introduced for the purpose of showing no signals or warnings were given of the approach of the train. That the attorney for defendant so understood it is shown by cross-examination of the witness. (Fols. 527 to 538.)

Mr. Levinsky said (fol. 538): "I am cross-examining him on the basis of his claiming he didn't hear that whistle."

In his direct examination the witness did not say he did not hear the whistle, so counsel's remark must have had reference to the statement of the witness that he heard no noises except those he described. If counsel for defendant understood the effect of the witness' testimony to be that he did not hear any warning signal, it is probable that the jury so understood it and that the witness meant to be so understood. Counsel for defendant had objected to the question asking directly whether the bell was rung on the ground that it was leading and suggestive. The objection was overruled and such ruling is assigned as error on appeal. Later in the trial counsel for plaintiff seems to have so formed his questions as to avoid the objection made (see fols. 451, 466, 491, 493), and it is fair to infer that all persons connected with the trial understood that the questions and answers concerning noise had reference to the matter of warning signals. It also may be noted in folio 529, the following answers were given:

"Mr. Levinsky (cross-examination of witness Buller). Q. This train may have whistled for this crossing and you did not hear it? A. And it may not, I know it did not. I have my normal hearing and every train in Lodi when it whistles if I am away even a half a mile, I think I hear it if it whistles. Q. Because you did not hear it is the only reason you say it did not whistle, is that correct? A. Well, is there another way to know it, could I see it if it whistles? Q. Please answer my question. A. Well, it is just that, I have another reason—if it whistles it blows the steam up from the whistle, I didn't see that, I didn't see even the steam of the whistle."

Herbert Waite testified as follows: "It might have been 40 feet, it might be 30 feet; something like that; I couldn't tell how far I was from the crossing. Q. (fol. 480). At the time the train passed you, was it making any noise? A. Well, some noise, of course. I don't know—I don't know how to answer the question. Noise ordinarily that it would make going by a (fol. 481) place, I should imagine. I know—it made a noise, that is all. I couldn't tell what particular part of the train made a noise; the noise sounded

like the ordinary noise that any train would make—oh, it made a noise, yes, but I couldn't describe it. I didn't hear any bell ring as the train passed me. Q. State whether or not within two minutes of the time you heard the train passing you, you heard any bell ring. A. Well, that I couldn't say because I never noticed the train until it (fol. 482) got right there. At the time the train passed me I don't remember of hearing any whistle. Q. Do you remember hearing either any bell or any whistle within two or three minutes of the time the train passed you? A. Well, I never noticed the train until it got right there. No, I didn't notice it to remember of."

[1] It seems clear that this testimony is sufficient to raise a conflict as against the testimony of the train crew, who testified to the giving of the signals and presented a question for the jury's determination, and would be sufficient, if believed, to justify the inference that no bell was rung or signal given.

[2] In this connection it may be said that negative testimony of witnesses who are in a position to hear and to observe, who declare they heard no signals and saw none, even as opposed to positive testimony that signals were given, presents a question to be submitted to the jury, and it has been held such negative evidence may be sufficient to sustain a verdict. (Jones on Evidence, sec. 898; vol. 23, C. J., sec. 1787, where many cases upon the question are cited.)

We find in *Thompson* v. *Los Angeles etc. Ry. Co.*, 165. Cal. 748 [134 Pac. 709], a holding which in principle we deem applicable, as follows: "But we think it must be held that there was enough in the evidence to justify the jury in finding that the motorman was negligent in not giving proper warning, by bell or whistle, of his approach. It is true that the only evidence that he did not give such warning was negative, consisting of the statements of the people in the automobile that they heard no signal. But, if they were so situated, as they undoubtedly were, as to have been able to hear a bell or whistle sounded from the motor car, their failure to hear is some evidence that no such signal was given. (Citing cases.) That there was positive testimony to the contrary does not conclusively establish that a warning was given. It creates merely a conflict of testimony,

which is finally resolved, so far as this court is concerned, by the verdict of the jury. This circumstance alone supports the finding of negligence."

In *Exposita* v. *United Ry. Co.*, 42 Cal. App. 320 [183 Pac. 576], wherein a verdict for defendant was returned, the court, in speaking of negative testimony, held: "The defendant offered the only kind of evidence available in the nature of the case. Its negative character affected its weight and sufficiency. Conclusive proof is never necessary to justify the verdict of a jury. The jury had the right to draw its own inference from the evidence."

*Burke* v. *Brooklyn W. & W. Co.*, 86 App. Div. 296 [83 N. Y. Supp. 795] holds: "Whether the bell of defendant's engine was rung as the train approached the place of the accident is a question for the jury, though five persons testified it was rung, all being employees of defendant, and four of them engaged in the management of the train, and only two testified they did not hear the bell, but only the rumbling of the cars, they being near the train, and the attention of one of them being attracted, when it was some distance away, to the danger of children approaching on the track."

[3] The defendant company's negligence is also predicated upon the alleged failure of the enginemen to maintain a lookout as they passed from the water-tank to and over the crossing. The testimony of the engineer and fireman disclosed that they observed many persons, presumably section laborers, along and close to the track between those points, but did not see the man Jones at work at the intersection of the tracks and did not know of the happening of the accident until after they had brought the train to a standstill after receiving stop signals. The day was a bright clear day. The train stopped some 1,700 feet beyond the intersection, to the north. Evidence of this fact was clearly admissible as tending to some extent to show a lack of care of the enginemen, as well, perhaps, as to throw light upon the speed at which the train was traveling.

From these undisputed facts the jury may well have inferred negligence on the part of the men in charge of the operation of the train.

[4] The presumption is, of course, that the deceased used ordinary care for his own safety. (*Olsen* v. *Standard*

*Oil Co.,* 188 Cal. 20 [204 Pac. 393]; *Green* v. *Southern Pacific Co.,* 53 Cal. App. 194 [199 Pac. 1059].)

In support of this presumption there is evidence, as hereinbefore noticed, that several trains other than this special freight had passed the point where Jones worked, to which he, in the exercise of ordinary care, gave the right of way. Undoubtedly Jones saw, or will be presumed to have seen, the train standing still while at the water-tank. He undoubtedly then continued with his work under the assumption that trains would not be operated without warning signals to give him an opportunity to protect himself and avoid being run down. (*Kiye Konno* v. *Northern Pac. R. Co.,* 127 Wash. 607 [221 Pac. 418].)

That case cites *Anest* v. *Columbia & P. S. R. Co.,* 89 Wash. 609 [154 Pac. 1100], which was a case where a track inspector was run down, while riding on a speeder, by an engine which was proceeding tender first, wherein the evidence was held to warrant a finding that those in charge of the engine were guilty of negligence in not keeping a proper lookout.

We find California authorities we deem squarely in point in *Egan* v. *Southern Pac. Co.,* 15 Cal. App. 766 [115 Pac. 939], and *Barboza* v. *Pacific Portland Cement Co.,* 162 Cal. 36 [120 Pac. 767].

In the Egan case the injured person was an employee of the defendant; here the deceased was an employee of an independent corporation which had been requested by defendant to send its track workers to the intersection to make necessary repairs; there the train was backed upon the workman without warning or placing anyone upon the rear of the train for the purpose of keeping a lookout and giving warnings; here the train was not backing but advancing with the engineer and fireman in the engine at the front of the train, where there was full opportunity, in the exercise of ordinary care, to have observed the injured party and to have given warning. Nevertheless, they failed either to see or to warn. The engineer knew there were persons engaged in work near to and upon the track.

It is true that if the deceased had looked, he could have seen the approaching train and one step would have taken him to safety, as the jury found in its answer to the special issue No. 12, but shortly before the accident he had seen

the train motionless 1,534 feet away from him. No warnings, under the finding of the jury, were given. There was nothing to communicate an intention of immediate movement upon the part of those in charge of the train.

We quote from the Egan case the following: "Plaintiff was there to work, and to this work it was his duty to give attention. Having first exercised his sense of sight and no imminent danger being evident, it was his duty to resume work, and he was rightfully upon the track, and if it be said that it is the duty of one who is employed to be constantly exercising his sense of sight, it is the equivalent of saying that he must not work when a train is standing upon the track above him, for he could not work and at the same time observe the approach of the train. When thus employed upon the track, he occupies a very different position from the pedestrian or stranger entering upon the track and using the same as a thoroughfare or seeking to cross the same. In both instances care and the exercise of the senses are required before entering upon the place of danger, but the duty which devolves upon the one to continue the exercise of his sense of sight should not be held to devolve with the same strictness upon the other, employed by the railroad company to work upon the track. Plaintiff, being rightfully upon the track, and in the performance of the duty enjoined upon him by the defendant, in the exercise of an employment upon said track, had a right to assume that the train would not be backed down upon him without warning, and it should not be said that he contributed to his own injury in the doing of that which his employment required that he should do. (*Morgan* v. *Robinson Co.,* 157 Cal. 348 [107 Pac. 695].)

"The evidence supported the finding implied by the verdict and we see no error in the action of the court denying a new trial."

If we substitute in the next to the last of the preceding sentences the word "run" for the word "backed," the foregoing quotation fits both the facts and the principles of law involved herein most perfectly.

In the Barboza case, *supra,* the plaintiff, as administrator, brought suit against the defendant, Cement Company, for the negligent killing of his intestate. The deceased was a laborer employed by the Southern Pacific Company and, while

engaged in repairing the track near Tolenas station, he was struck and killed by defendant company's train made up of a number of cars propelled from the rear by a locomotive. Among the averments of negligence was that defendant failed to ring a bell or blow a whistle, which averment the jury in its verdict found to be true.

"No bell was rung nor was the whistle blown. There was a brakeman on a car next the engine and another on the third car from the forward end of the train. From this position the second brakeman saw that the deceased and the others were in danger and signaled the engineer to stop, but it was then too late to bring the train to a complete standstill in time to prevent the injury. There was evidence that the train, at the time it was bearing down on the deceased, was running at the rate of eight miles an hour. A through train of the Southern Pacific Company was at the same time passing upon the main line track and the noise produced by this through train was, as the jury may have well inferred, sufficient to prevent the men working on the track from hearing the approach of defendant's train. The engineer in charge of the latter had seen the men at work when he had brought his train into Tolenas and knew, or might have known, that they were still at work when he started to return. The point where plaintiff was working was within the limits of the Southern Pacific yard at Tolenas, but it was not at the end of the yard equipped for switching work, or in which the switching was usually done.

"In this state of the evidence we cannot assent to appellant's contention, that, as a matter of law, it should be held that the defendant was not guilty of negligence. Whether or not, under all the circumstances, a due regard for the safety of the men on the track required the defendant to give warning of the approach of its train by ringing a bell or blowing a whistle, or by having upon the front car of its train a man who could see persons or objects on the track, were questions of fact to be determined by the jury. It is no doubt true that the rules with reference to the necessity of giving warning of an approaching train by means of whistles or bells or otherwise, are not always applicable to engines and cars which are being moved about the tracks of railroad yards while switching. (*Aerkfetz* v. *Humphreys*, 145 U. S. 418 [36 L. Ed. 758, 12 Sup. Ct. Rep. 835, see,

also, Rose's U. S. Notes] ; *Crows* v. *New York C. R. R.*, 70 Hun, 37 [23 N. Y. Supp 1100].)   But, as we have seen, the point where the train struck Augustus was not within that part of the yard devoted to switching and the train had completed its switching and had started on its return run to Cement.   Furthermore, the noise produced by the passing train was a factor which the jury might well have considered as requiring greater effort to warn persons on the track than would have been required if the conditions had been such that the approach of defendant's train itself might have been more readily heard.

"Nor can it be said, as a matter of law, that the deceased was guilty of contributory negligence.   A man working upon a railroad track is, of course, bound to take reasonable precautions for his own safety.   Knowing that trains are likely to pass, he must use the care which an ordinarily prudent man would exercise to avoid being struck by such train. But what is reasonable care under the circumstances is, like the question of defendant's negligence, primarily to be determined by the jury.   The work in which Augustus was employed required that he be in the middle of the track and in a stooping position.   Obviously he could not perform his work properly if he were constantly looking to see whether a train was approaching.   In view of the further fact that the noise of the passing train interfered with his opportunity of hearing defendant's train, the question whether he was guilty of negligence in not becoming aware of the cars bearing down upon him was properly submitted to the jury. On the facts bearing upon both these questions, i. e., the negligence of the defendant and the contributory negligence of the plaintiff, the case is very similar to *Egan* v. *Southern Pacific Co.*, 15 Cal. App. 766 [115 Pac. 939]."

The jury was justified, therefore, under the evidence in this case, in inferring negligence on the part of defendant in two respects, viz.: failure of the enginemen to maintain a reasonable lookout and also failure to give the proper crossing signals and warnings.

[5]   Many other authorities may be cited to support the proposition, under more or less similar circumstances to those shown here, that the common "stop look and listen" rule applicable to travelers and to railroad employees not engaged in the duties of their employment cannot apply to

persons lawfully at work repairing an intersection of railroads. (*Alabama T. N. R. Co.* v. *Huggins*, 205 Ala. 80 [87 South. 546]; *Louisville N. R. Co.* v. *Heidtmueller*, 206 Ala. 29 [89 South. 191].)

[6] Questions of negligence and contributory negligence are for the jury. (*Southern R. Co.* v. *Wright*, 207 Ala. 411 [92 South. 654]; *Cincinnati etc. R.* v. *Owsley*, 191 Ky. 661 [231 S. W. 210]; *Louisville & N. R. Co.* v. *Heidtmueller*, 206 Ala. 29 [89 South. 191].) *Pollack* v. *Minneapolis & St. L. R. Co.*, 44 S. D. 249 [183 N. W. 859], which distinguishes between the rules applicable to licensees and invitees.

*Lamport* v. *Southern Pac. Co.*, 183 Cal. 326 [191 Pac. 527], involves the point that it was a question for the jury to determine whether or not the failure of the trainmen to observe and warn the deceased of danger was negligence. In that case a switchman had been run down by the backing upon him of a train, while he was engaged in signaling the engineer of another train, where there was evidence that the deceased was directly on a line between the engineer and the switchman of the other train so as to be clearly in the field of their vision. (And, of course, if he, the injured man, had looked, as in the instant case, he could have seen the approaching train.) The court held: "No argument is required to demonstrate the proposition that under those circumstances, they should have observed him and warned him of the danger, or that it was at least a question for the jury to determine whether or not their failure to do so was negligence. It is obvious from a mere statement of the facts that the evidence tended to show negligence if it did not demonstrate it absolutely."

*Lawrence et al.* v. *Southern Pacific Co.*, 189 Cal. 434 [208 Pac. 966] (a collision case between an auto and a train), holds that the question of contributory negligence in failing to stop, look and listen was a question of fact for the jury's determination, and a verdict against the United States director of railroads was sustained.

*Roberts* v. *Southern Pacific Co.*, 54 Cal. App. 315 [201 Pac. 958], wherein the order granting a new trial against the defendant was affirmed, the court reiterates the general rule that the question of contributory negligence is one of fact for the jury under proper instructions and is not one of law, save in those cases in which, judged in the light of common

knowledge and experience, there is a standard of prudence to which all persons similarly situated must conform. In such case failure to reach that standard is contributory negligence as a matter of law.

In our opinion those two California cases, *Egan* v. *Southern Pacific Co.* and *Barboza* v. *Portland C. Co., supra,* are determinative of almost every issue presented on the argument by the appellant. Some of the authorities relied upon most confidently are distinguished in the Barboza case. Appellant cites many cases of pedestrians and travelers, wherein the "stop-look-and-listen" rule has been applied and argues their applicability to the case at bar. He also cites other cases in support of the proposition "that the agents and servants in charge of railway trains owe no duty to look out for the safety of brakemen or section hands." That last quotation is from *Kirkland* v. *Bixley et al.,* 282 Mo. 462 [222 S. W. 462]. The longer quotation from the same case made by counsel for appellant in his brief in some respects was not accurately made, nor is the application of the rule as broad as appellant seems to regard it, for the court in that case applied it only as to those cases where the "humanitarian rule" is not pleaded nor invoked. That action was one under the federal Employers' Liability Act. The court there said: "The rule in this state requires section men to protect themselves from passing trains. In other words, train crews, so far as section men are concerned, have the right to expect a clear track, and the humanitarian rule (when violated) is the only salvation for the unfortunate section man."

In *Moore* v. *St. Louis S. F. Ry. Co.* (Mo. App.), 267 S. W. 845, it is held: "At the foundation of the humanitarian rule lies the principle that no one has the right, knowingly or negligently, to injure another, when he knows or should know, if reasonably careful, that his fellow is in danger of injury at his hands and he possesses the means of removing the danger."

[7] In California, as we have shown, the humanitarian rule, in principle at least, has been crystallized in the statute and in the best considered cases. In the instant case, it was the duty of appellant's employees in charge of its train to keep a vigilant lookout. The line of demarcation between this and traveler's crossing cases has been shown.

74 Cal. App.—3

Under section 486, Civil Code, all persons at or near railway crossings, not excluding employees or invitees, rightfully engaged in repairing tracks, are entitled to warning signals, a failure to give which constitutes one kind of negligent operation of trains.

[8] The authorities cited by counsel are not necessarily in conflict with the well settled and reasonable rule applicable in a case like this that while the party injured must use reasonable, ordinary care and cannot recover for injuries due to his own negligence, the duty to use reasonable care in such a relation as shown by the evidence herein is a reciprocal duty, resting upon the railroad company to use reasonable, ordinary care by means of such proper and adequate warnings and signals as will reasonably be adequate to avoid injury to the persons lawfully employed upon the tracks. The status of the deceased Jones was not that of a mere licensee, nor of a trespasser, but analogous at least to that of an invitee.

The case of *Midland Valley R. Co.* v. *Kellogg et al.,* 106 Okl. 237 [233 Pac. 716], holds: "In the case of a licensee who is on the premises by invitation, express or implied, the company is required to exercise that degree of care and watchfulness to protect against injury to such person as is commensurate with the probability that such person may be upon the track at that point. In the case of a bare or mere licensee, being one whose presence on the premises is merely tolerated, the company, as in the case of a trespasser, owes no duty except not wantonly or wilfully to injure such person after his perilous position is discovered."

We may remark that *Soares* v. *Davis,* 64 Cal. App. 486 [222 Pac. 165], is easily distinguishable upon the facts from the case on appeal. In that case, the undisputed evidence established that warning signals were given. There was conflicting testimony as to some signals, but as to other signals there was no conflict; for which reason the court held that as a matter of law the negligence of the deceased had been conclusively established.

The case of *Neidlein* v. *Southern Pacific Co.,* 180 Cal. 63 [179 Pac. 191], which cites with approval *Aerkfetz* v. *Humphreys et al., supra,* and other cognate authorities cited by counsel for appellant, is not at all, in its facts or guiding principles, authority, under the evidence, in the case at bar.

There the accident was in what is strictly a switch-yard, and the injured party was a switchman working in the freight shed at Sacramento within the yard when crushed between two cars, in a position where the enginemen neither knew nor had reason to suspect him to be.

The accident, as pointed out, in the instant case occurred on the main through line of the defendant company, on the western border of its train-yard. The injuries were inflicted by an extra through freight. The deceased Jones was known or should have been known by the defendant to be working at the precise point where he was killed. There is a marked distinction in the decisions between the two kinds of cases. (*Egan* v. *Southern Pacific Co., supra; Barboza* v. *Portland Cement Co., supra*.)

The case of *Flowers* v. *Virginia R. Co.*, 135 Va. 367 [116 S. E. 672], was one wherein a railroad employee of an independent contractor was struck by an engine of the defendant while he was leaving work; he was held to be an invitee, not a mere licensee. We quote: "While it is the duty of employees of independent contractors, employed on or along a railroad, to use reasonable care for their safety, yet, as between them and the railroad company, the duty is reciprocal, and in such cases the law does not require of such employees at work on or along the tracks, to maintain a constant lookout for approaching trains, and at the same time pursue their labors, but it does require of the operatives of trains an active vigilance, and to give reasonable danger signals to attract the attention of the persons so employed to avoid doing injury to them, and to enable them to get out of the way of moving trains. Instructions to the jury to the contrary were rightly rejected."

Additional cases supporting our views are: *Wineinger* v. *Union Pac. Co.*, 276 Fed. 65; *Cubitt* v. *New York Cent. R. Co.*, 278 Pa. 366 [123 Atl. 308]; *Hasting* v. *Southern Shore R. Co.*, 272 Pa. 212 [116 Atl. 155]; Wigmore on Evidence, 2d ed., 1068, par. 664; *McDonald* v. *New York C. R. R.*, 186 Mass. 474 [72 N. E. 55]; *Thompson* v. *Los Angeles R. Co.*, 165 Cal. 748 [134 Pac. 709]; *Bethlehem Steel Co.* v. *Raymond Concrete Pile Co.*, 141 Md. 67 [118 Atl. 279]; *Dempsey* v. *New York Central*, 81 Hun, 156 [30 N. Y. Supp. 724]; *Milauskis* v. *Terminal R.*, 286 Ill. 547 [122 N. E. 81]. Duty to exercise ordinary care to invitee. (*Ingram* v. *Rut-*

*land Co.,* 86 Vt. 550 [86 Atl. 813] ; *Illinois Central R. R.* v.
*Frelka,* 110 Ill. 498.)

We have examined with care appellant's argument on al-
leged errors occurring during the trial. We believe that as
to all the preliminary rulings included in the bill of excep-
tions prior to the actual commencement of the trial, cover-
ing the questions of the alleged promise of counsel for
respondent to dismiss the action as against the defendants
Webb and Alexander; the denial of the first motion for con-
tinuance and the later granting of the same, and continu-
ance of the case from the twenty-third day of October, 1923,
to the first day of November, 1923; the objection to the im-
panelment of the jury and taking testimony, preliminarily,
of Mrs. Ruth Jones; the denial of the motion to remove the
cause to the federal courts; and all of the matters covered in
the first twenty-three specifications, the rulings of the trial
court were free from any error affecting the substantial
rights of appellant.

[9] Very many of the specifications were to alleged
errors of the court sustaining or overruling objections to
questions merely because of their form as to being leading
or suggestive. In this respect, wherever such objections
were sustained to appellant's questions, in every instance
the evidence sought to be elicited was put before the jury by
further questions; hence nothing of importance was ex-
cluded. Where appellant's objections were overruled, the
questions were not harmfully leading. It appears to us that
some of the specifications, even if technically well taken,
were almost frivolous. To illustrate: The witness Woodside
stated (fol. 314 et seq.) : "I don't know that I ever looked at
the engineer (referring to seeing the engine as it passed him
about the time of the accident). Q. By Mr. Gallagher:
You don't remember seeing him at the place where Mr. Jones
was lying beside track at any time, do you? A. No, I didn't
see him pass the crossing. Q. You didn't see him pass the
crossing, did you see him at any time after he passed the
crossing? A. Of course, I seen him after he passed, some-
body drawed my attention to him. Q. I will ask you if he
came back to the point of the collision. Mr. Levinsky: Ob-
ject to that as incompetent, immaterial and irrelevant,
occurring after the accident happened. The Court: Answer
the question, objection overruled. (Exception No. 26.)

A. I don't know. Mr. Gallagher: Q. Did you see him there? A. No, I did not, I was there after the accident happened. Q. Did you see the fireman there? Mr. Levinsky: The same objection. The Court: Objection overruled. To which defendant excepted. (Exception No. 27.) A. No, I did not."

If it be conceded that the rulings on the foregoing questions were erroneous, it is impossible to deduce that they were prejudicial.

[10] Appellant predicates error on the action of the trial court in striking out a portion of the answer of the defendant Southern Pacific Company without notice. He admits that the portion stricken out might not ordinarily have been relevant or admissible in evidence, yet insists that error was committed. If the striking out was error, then, under that admission of counsel, we determine no substantial injury could have resulted from the order.

[11] The objections to the impanelment of the jury were not well taken. The permission given respondent to pass her peremptory challenge to the jurors and later exercise such peremptory challenge was not error. The ruling was within the discretion of the court. No abuse of discretion was shown. (*Silcox* v. *Lang*, 78 Cal. 118, at 123 [20 Pac. 297] ; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, at 559 [147 Pac. 238].)

[12] The objections to the relatives of the deceased testifying to his appearance and bodily health were properly overruled, as were the objections to the witness testifying as to the appearance of the deceased at various times and places prior to the accident and after the accident while in the hospital. His appearance during the time he was alive in the hospital was certainly material as bearing on the nature, extent and severity of his injuries which resulted in his death.

[13] The objections to the admission in evidence of the letter from the superintendent of the Southern Pacific Company to the Central California Traction Company were properly overruled. It is important to show the reason for the presence of Jones upon the crossing. The fact that no written answer was sent is of no importance. No written reply was requested and there is nothing in the letter to indicate one was expected.

We believe no errors affecting the substantial rights of appellant were committed by the trial court in any of its rulings concerning the admissibility or rejection of testimony. Our attention has not been called to any material evidence which was excluded, nor to any at all prejudicial which was admitted.

We pass now to a consideration of the instructions.

[14] Instruction numbered 4, requested by appellant and refused, is as follows: "The court further instructs you that ordinary care is that degree of care which an ordinarily prudent person, situated as the decedent, B. B. Jones, was, as shown by the evidence and circumstances, at or about the time of the accident, would usually exercise for his own safety."

The refusal of that instruction was proper. It is an instruction upon fact and is not accurate as a definition, because of the use of the word "usually" instead of the more appropriate word "ordinarily" or "reasonably" in the last line. The subject of ordinary care is sufficiently covered in defendant's instructions numbered 2 and 3, defining negligence and contributory negligence, which were given.

Instruction numbered 6, which appellant argued was refused, was given by the court as requested.

[15] Instruction numbered 7, requested by appellant and refused, is as follows: "If you should believe from the evidence that the plaintiffs have proven their case by a preponderance of the evidence, and if you believe that the plaintiffs are entitled to damages, then I instruct you that the plaintiffs can recover only for the pecuniary loss suffered by them through the death of B. B. Jones, and that the loss of society, comfort and care suffered through the bereavement can only be considered for the purpose of estimating such pecuniary loss, and that you cannot consider the loss of society, comfort and care suffered through the bereavement for the purpose of adding anything more than pecuniary loss. And I further instruct you that you cannot and must not consider grief, mental suffering and sorrow, or either of them, in arriving at the amount of damages, and that you cannot allow exemplary damages, or vindictive damages."

There was no error in the refusal because the subject of the instruction (the measure of damages) was fully covered in defendant's instruction numbered 5, which was given.

[16] Instruction numbered 8, requested by appellant and refused, is as follows: "If you find from the evidence in this case that any plaintiff is entitled to damages, then I charge you that in determining the pecuniary loss and injury sustained by any such plaintiff, if any, you should take into consideration in determining the amount of such pecuniary loss and injury the age of said deceased, and the length of time which he would reasonably have been, according to the evidence in this case, expected to live, had this accident not happened; and also for how long during the continued expectancy of the life of said deceased would he have been able to earn money by his physical exertion and labor, and whether or not said deceased might have through age or sickness been likely to have become wholly or partially dependent for support upon the plaintiffs, or any of them."

There was no error in the refusal because in so far as it correctly states the law, it was fully covered by other instructions given, viz.: in instruction numbered 5; and it contains speculative references whether or not the deceased "might have, through age or sickness, been likely to become wholly or partially dependent for support upon the plaintiffs." This speculative portion warranted its refusal.

Instruction numbered 5, referred to heretofore, given at the request of appellant, copied for convenient inspection, is as follows: "If you find from the evidence in this case that the defendant, Southern Pacific Company, is liable for any damages as to Ruth Jones, one of the plaintiffs in this case, which were caused by the death of said B. B. Jones, I then charge you that in determining and assessing such damages, you shall assess the same at the present worth of the pecuniary loss and injury sustained by said Ruth Jones, and in this regard I charge you that in determining the actual pecuniary loss and injury sustained by her, you will take into consideration the age of said Ruth Jones, how long said Ruth Jones might reasonably be expected to live after the death of said B. B. Jones, the age of said B. B. Jones, his earnings at and prior to the time of his death, his habits as to thrift and economy, whether there would have been any likelihood or probability of said deceased acquiring

property which would have descended to, or have been received by, said Ruth Jones, what contributions, if any, were made by said deceased, or would likely to have been made by said deceased had he continued to live, to, or for, said Ruth Jones, and you may take into consideration in determining said actual pecuniary injury and loss, the actual pecuniary value, if any, of the society, comfort and companionship of said deceased to and with said Ruth Jones for the period of time that it reasonably might be expected to have continued, but that you shall not consider or place any value upon any grief, mental suffering or sorrow sustained by her as a result of said death.''

[17] Instruction numbered 14, requested by appellant and refused, is as follows: ''If you believe, from the evidence, that the deceased B. B. Jones in any manner contributed to the accident which resulted in his death, and for which this suit has been brought, then I charge you that you must find a verdict for the defendant Southern Pacific Company.'' This instruction is clearly not the law. It was properly refused. B. B. Jones, by his mere presence on or near the crossing, when struck by the train, of course, contributed to the accident which resulted in his death. In order to bar a recovery, the deceased must have negligently contributed to the happening of the accident. The instruction omits the element of negligent contribution. (*Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066].)

[18] Instruction numbered 15, requested by appellant and refused, is as follows: ''You are instructed that it appears from the evidence in this case that the deceased, B. B. Jones, was guilty of conduct amounting to negligence and lack of ordinary care, which conduct was a contributing and proximate cause of his death, and that, therefore, your verdict should be for the defendant, Southern Pacific Company.''

A mere inspection shows that this instruction directed the jury as to matters of fact, and, therefore, was properly refused. The giving of respondent's instruction numbered 29, which correctly stated the law, constituted no possible reason why the court should instruct the jury that the deceased was guilty of negligence.

[19] Instruction numbered 16, requested by defendant and refused, is as follows: ''In another part of these in-

structions you are advised as to the law of this state regarding the duty of a railroad company to provide and sound bells or whistles when approaching a highway crossing, this instruction is to advise you that it is not necessary that both the whistle be sounded and the bell rung. If either the whistle is sounded or the bell rung, as required by law in approaching the crossing, the duty of the railroad company is performed.''

It was properly refused because it does not correctly state the law applicable to the facts in this case. Under our view of section 486 of the Civil Code, the law requires the ringing of the bell within the corporate limits of a city, at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and to be kept ringing until it has crossed such street, road or highway; there is no requirement that the whistle be sounded in cities, although, of course, there is no law forbidding that to be done. The subject was covered by other instructions given, to wit: 15 and 22, given at request of respondent.

[20] Instruction numbered 17, requested by appellant and refused, is as follows: ''You are instructed that it was not the legal duty of the defendant Southern Pacific Company, at, or immediately before, the time of the accident sued for in this action, to have maintained any automatic, or other signal at, or near, the point of said accident, and you are instructed that you cannot find a verdict in favor of the plaintiffs, or either, or any, of them, because of such absence of any such automatic, or other signal.''

Instruction numbered 20 on the same subject, as to automatic signals, flagmen or watchmen, fully covered the subject matter of 17; the giving of both instructions would have been useless repetition.

[21] Instruction numbered 18, requested by appellant and refused, is as follows: ''You are instructed that there was no duty on the part of the engineer or fireman of the engine that struck B. B. Jones to stop said engine west of the crossing, unless they, or either of them, at a time when said engine could have been stopped west of the crossing, actually discovered said Jones in a place of danger and realized and believed that he either could not or would not

extricate himself in time to prevent the accident, if the train continued at its then rate of speed.''

As will be observed, this instruction is upon the subject of the law of the last clear chance, concededly not in this case, hence its refusal was not error.

[22] Instruction numbered 19, requested by appellant and refused, is as follows: "I instruct you that where the evidence is conflicting as to whether the whistle was blown or not and whether the bell was rung or not, and there is affirmative testimony that the whistle was blown and that the bell was rung, and negative testimony by other witnesses that they did not hear it, the affirmative evidence of the fact that the whistle was blown and that the bell was rung should overcome the negative evidence that the whistle was not blown and that the bell was not rung. And that testimony of the witnesses that they did not hear the whistle blown or the bell rung is not positive evidence that the whistle was not blown or that the bell was not rung."

This instruction was upon the weight of evidence, which it was the sole province of the jury to determine. Its refusal was correct.

[23] Instruction numbered 22, requested by appellant and refused, is as follows: "Crossing signals are not intended, or required, for the benefit of section men at work upon, or along, the track near a crossing, and the failure to give such signals is not negligence as to such section men thus engaged."

The authorities hereinbefore cited show that said instruction 22 does not embody the law of this case. Crossing signals under our law are intended for the benefit of anybody who may be on or approaching a crossing and does not except or exclude persons rightfully at work upon or along or near a railroad crossing.

[24] Instruction numbered 23, requested by appellant and refused is as follows: "Railroad companies in the operation of their trains, may rightfully assume that section men, while at work, upon, or along, the track, will look out for the approach and passage of trains at all times, and ordinarily such railroad companies owe to section men no duty to warn them of the approach of trains."

This instruction, as shown in the foregoing opinion, upon the authority of the Egan case, *supra*, and the Barboza

case, *supra,* does not embody the law of California. It
assumes it to be the duty of any section-man at all times
to look out for the approach and passage of trains. The
true rule is he must use reasonable, ordinary care to pro-
tect himself. It is manifest that if he spent all his time,
when he had work on a railroad track to perform, in
looking out for the approach of trains, he could never do his
work. The question whether or not he exercised reasonable
and ordinary care and watchfulness was a question of fact
for the jury to determine.

[25] Instruction numbered 24, requested by appellant
and refused, is as follows: ''A person working on, or along,
a railroad track, where cars, or trains, are passing, or
likely to pass at short intervals, while in a position to be
endangered by such trains, must pay attention to his sur-
roundings, and he must employ his natural faculties, and
exert due diligence to avoid such dangers; he must look
and listen to ascertain whether danger is threatened by his
situation, and his failure to do so constitutes absolute negli-
gence as a matter of law.''

It was properly refused for the same reasons as was 23,
and in addition it assumes the deceased knew trains were
likely to pass at short intervals.

[26] Instruction numbered 25, requested by appellant
and refused, is as follows: ''If you believe, from a pre-
ponderance of the evidence in this case, that the deceased,
B. B. Jones, had been warned by the foreman of the sec-
tion men with whom he was working, to look out for the
trains of the defendant Southern Pacific Company, and that
his failure to heed such warning, proximately contributed
to his death, then your verdict should be for the defendant
Southern Pacific Company.''

The foregoing instruction was properly refused, because
it clearly implies, as a matter of fact, that Jones failed to
heed the warning of the foreman, and that his failure con-
tributed to his death. This subject has been sufficiently
amplified hereinbefore.

[27] Instruction numbered 26, requested by appellant
and refused, is as follows: ''If you believe, from the evi-
dence, that the deceased, B. B. Jones, was careless or negli-
gent, and that his neglect contributed approximately to the

accident resulting in his death, the plaintiff cannot recover, even though you should believe from the evidence, that the defendant Southern Pacific Company negligently omitted to give warning of the approach of its train by blowing the whistle or ringing the bell."

This instruction was clearly erroneous because of the use of the word "approximately" instead of "proximately." It perhaps might easily have been amended, but the trial court no doubt felt that the instructions given covered the subject, and we agree in that view.

[28] Instruction numbered 28, requested by appellant and refused, is as follows: "The railroad track of a steam railway must itself be regarded as a signal of danger, and one working upon or along said railroad track must avail himself of every opportunity to look and listen for approaching trains. If B. B. Jones, taking these precautions, would have seen or heard the approaching trains, the very fact of his injury and death will raise the presumption that he did not take the required precautions."

Under the authorities and the law of California on the subject of workmen, the foregoing does not embody a correct statement of the law. If a workman on a railroad crossing avails himself of every opportunity to look and listen for approaching trains, he will be looking and listening all the time and not working at all. The refusal was not error.

[29] Instruction numbered 29, requested by appellant' and refused, is as follows: "If you should believe, from a preponderance of the evidence that no whistle was sounded, and no bell was rung, on the train of the defendant, Southern Pacific Company, these circumstances did not excuse the deceased, B. B. Jones, from looking and listening while working upon, or along, the railroad track of the defendant, Southern Pacific Company. And if you believe that the deceased, B. B. Jones, relied upon his belief that he did not hear any whistle or any bell, and, therefore, he did not remove from the place at which he was working on, or along the railroad track of the defendant, Southern Pacific Company, and by reason thereof he was injured, which injuries resulted in his death, the plaintiffs cannot recover

any damages, and your verdict must be for the defendant, Southern Pacific Company.''

The foregoing clearly instructs upon the facts and would have told the jury as a matter of fact that the deceased did not look and listen for trains at all, and was properly refused.

[30]  Instruction numbered 31, requested by appellant and refused, is as follows: ''The failure of the engineer to sound the whistle or ring the bell, if you find from a preponderance of the evidence in this case that such was the fact, did not relieve said B. B. Jones from the necessity of taking ordinary precautions for his own safety. Negligence of the railroad employees in such particulars, if any you find, was no excuse for negligence on the part of said decedent. He was bound to exercise all of his senses and faculties to avoid being struck by any approaching train and not to remain carelessly in a place of danger.''

This instruction invaded the domain of fact and would have told the jury that the deceased Jones remained carelessly in the place of danger, and was guilty of negligence. It was properly refused.

[31]  Instruction numbered 32, requested by appellant and refused, is as follows: ''Assuming that the duty of the defendant Southern Pacific Company was to anticipate that a person might be working upon, or along its railroad track, there was also a duty on the part of the deceased, B. B. Jones, to exercise reasonable and ordinary care while working upon or along the railroad track of the defendant Southern Pacific Company; and if you believe, from the evidence, that the deceased, B. B. Jones, if he had used his eyes and ears while working upon or along said track, and before he was struck by the engine or cars, could have observed the approach of the train on the track, and so have avoided the accident, his failure to exercise such care, and thus to make use of his eyes and ears, is contributory negligence, and in such event your verdict must be for the defendant, Southern Pacific Company.''

This was properly refused also because it invades the province of the jury by instructing, impliedly at least, upon matters of fact. It clearly implies that deceased did not use his eyes and ears while working, and that he failed to

exercise care. It is hypothetically argumentative, and *does not include all qualifying facts essential.*

[32] Instruction numbered 33, requested by appellant and refused, is as follows: "I instruct you that it is the duty of a person working on, or along, a railroad track, over, upon and along which locomotives and trains of cars frequently cross and pass over, to look and listen for coming trains. It is his duty to use all of his faculties, and it is not enough if he merely listens believing that the people in charge of any approaching engine will ring a bell or sound a whistle."

The foregoing also instructs on matters of fact because it contains the implication that Jones did not use all his faculties, but merely listened and did not look. It was properly refused.

[33] Instruction numbered 34, requested by appellant and refused, is as follows: "If, after having heard all of the evidence in this case, you should believe, from the evidence, that the deceased, B. B. Jones, was negligent, and that his negligence proximately contributed to his death, and you should also believe from a preponderance of the evidence in this case, that the defendant, Southern Pacific Company was negligent, then I instruct you that in such an event, your verdict must be for the defendant, Southern Pacific Company."

The subject matter of this instruction is fully covered by instruction numbered 35, requested by appellant and given. Its refusal, therefore, was not erroneous.

[34] Instruction numbered 37, requested by appellant and refused, is as follows: "You have no right to, and cannot, disregard the testimony of the witnesses who were in charge of the train of the defendant, Southern Pacific Company at the time of the accident, simply because they were, or now are, in the employ of the defendant Southern Pacific Company, and you cannot reject your testimony, or the testimony of either of them, neither can you view their testimony, nor the testimony of either of them, with suspicion, unless it has appeared to your satisfaction, from their manner of testifying, or by other satisfactory and sufficient evidence, that they have not testified truthfully."

This was properly refused, because the jury was fully instructed in other instructions upon the credibility of witnesses and neither party is entitled to have instructions as to the credibility of particular witnesses.

[35]  Instruction numbered A, requested by appellant and refused, is as follows: "I instruct you that a railroad company is not required to blow the whistle on its engine while approaching crossings, or otherwise, within the corporate limits of a city, and if you believe from the evidence in this case that the accident for which this suit has been brought occurred within the corporate limits of the City of Lodi, then I instruct you that there was no obligation or duty on the part of the defendant, Southern Pacific Company, to blow its whistle on said locomotive approaching the crossing where the accident occurred."

The foregoing instruction contains a part only of the rule of section 486 of the Civil Code. The refusal to give the instruction was not prejudicial. It was not sufficiently qualified.

We may summarize our conclusions as follows:

1. The motion for nonsuit was properly denied;

2. Questions of appellant's negligence and of deceased's negligence and contributory negligence were questions for the jury and properly submitted to it;

3. The general verdict of the jury finds support in the evidence;

4. No error of law prejudicial to the rights of appellant occurred upon the trial;

5. The jury followed the instructions of the court as to the law; its findings upon the special issues also find support in the evidence and are in conformity with the instructions;

6. There is no necessary nor irreconcilable conflict between the general verdict and the answers to special issues numbered 11 and 12;

7. The court did not err in ordering the general verdict to be entered and recorded, nor in refusing to enter judgment in favor of defendant, Southern Pacific Company;

8. The special findings are consistent with and not, as contended, irreconcilably inconsistent with or destructive of the general verdict;

The sum of money allowed by the jury as damages was not excessive, nor given under the influence of passion or prejudice, but finds support in the evidence.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on September 24, 1925.