## PLECAS v. DEVICH.

No. 4605.   Decided November 8, 1928.   (272 P. 197.)

*Frazer & Wallis,* of Salt Lake City, for appellant.

*King & King* and *B. E. Roberts,* both of Salt Lake City, for respondent.

STRAUP, J.

This action was brought to recover damages for an alleged battery. It was an alleged fist and foot combat growing out of a quarrel between two neighboring women living in a Slavonic settlement near a railroad in Salt Lake City. Each alleged a battery committed on the other and claimed damages therefor, the plaintiff by her complaint, the defendant by her counterclaim. The case was tried to a jury, who on January 10, 1927, rendered a verdict in favor of the plaintiff for "$1,640.00 for injuries, doctor bill and hospital expenses, $500.00 exemplary, and costs"—a total of $2,140—on which judgment was entered on the same day for that amount and for $49 costs. On the defendant's motion for a new trial, the court made this order.

"The defendant's motion for a new trial having been heretofore taken under advisement and the court being now sufficiently advised in the premises, it is ordered that the judgment entered herein be modified changing the amount from $2,000.00 to $1,333.34 and doctor's fees from $120.00 to $113.25. It is further ordered that two weeks be given in which to accept judgment and in the event that same is rejected a new trial will be granted."

On March 29, 1927, two months and ten days after the time stated in the order had expired, and without further time having been asked or granted to make the election, the plaintiff served and filed a written consent and acceptance of the judgment so modified and reduced, whereupon an order was entered March 31, 1927, overruling the defendant's motion for a new trial.

The defendant appeals. She complains of insufficiency of the evidence to justify the verdict, of rulings relating to

evidence, and of the order overruling the motion for a new trial, urging in such respect that the plaintiff, having failed to make her election within the time stated in the order, made no showing to excuse the failure, and neither asked nor obtained leave to make the election thereafter, the new trial became absolute when the time stated in the order had expired.

The evidence as to the battery is in conflict. According to the testimony of the plaintiff, she sent a note to the defendant living near by stating:

"Please leave me alone. Don't talk about me. If you got anything against me, go see law."

In about five minutes the defendant came along the street talking loudly and swearing, entered plaintiff's house, and, after a few words and calling the plaintiff and her daughter "a whore and bad names," the defendant with her fists struck the plaintiff on the eye and head and kicked her several times in the stomach, knocking the plaintiff down and rendering her dizzy but not unconscious. The testimony of the plaintiff was corroborated by her daughter 15 years of age, who was present but did not interfere because as she testified of fright and of the defendant's threatened violence if she did interfere. The defendant was about 5 feet 11 inches tall and weighed about 265 or 270 pounds. The plaintiff was a small woman about 5 feet tall.

According to the testimony of the defendant, the note read, "old whore what for you tell everybody I owe you money;" that the defendant showed the note to her husband and to others, and, against the advice of her husband, went over to the plaintiff's house, but, as she testified, did not enter it, only stood on the porch by an open screen; that she took the note with her and said to the plaintiff, "Milka, dear, you think I am worthy what you say and what you write in this letter?" that the plaintiff replied, "Yes,"

whereupon the defendant said, "I help you all time, and you tell me a name like that, don't you be ashamed," and told plaintiff to take and keep the letter and say nothing about it and "give me the money that you owe me;" that the plaintiff took the note, threw it in the hall, opened the screen door, and hit the defendant "on my mouth and teeth," got hold of her sleeve and hair and tried to pull her in the house; that the defendant jumped off the porch, and as she jumped the plaintiff kicked her and something struck her in the back; that her lip was cut and bleeding, her eye black and swollen, her teeth knocked loose, and one of them later extracted. The testimony of the defendant that she was not in plaintiff's house, only on the porch or steps, and that the plaintiff struck her, is corroborated by the testimony of several witnesses.

Each denied she struck the other. The plaintiff called the police, who talked with both the plaintiff and the defendant. Each gave the policeman her version of the affray. No arrest was made. Each claimed permanent injury, the plaintiff an injury to the uterus, causing frequent hemorrhages, of which the plaintiff claimed she was still suffering at the time of the trial. Soon after the affray, she went to bed and sent for a physician. He found black and blue spots on her shoulder, knee, back, and abdomen below and to the left of the naval, "a flowing of a hemorrhagic type, more than ordinary flowing and of greater character, we call it really a small hemorrhage," for which he sent her to the hospital for five days, where she was attended by him, and since that time he attended her at intervals up to the time of the trial. The physician expressed an opinion that the hemorrhage could be caused by violence to the abdomen from kicking. The defendant called several witnesses who testified that the plaintiff, for some time prior to the affray, was afflicted with and complained of female or uterine trouble, and stated that she would be required to undergo an operation to get relief. The defendant also called several physicians who testified that it was highly improbable that

the hemorrhages of which the plaintiff complained were due to having been kicked or struck in the abdomen as claimed by her, and that the hemorrhages could not reasonably be attributed to such a cause. The plaintiff, however, testified that she suffered from no such trouble prior to the affray.

The defendant claimed she, too, was permanently injured in the back. She, too, summoned a physician shortly after the encounter, and because of her injuries used crutches, as she testified, for about a month. The doctor testified the defendant had a bruise on the lip, two teeth were loose, one of them extracted by a dentist, and that the defendant complained of pain at the back of the head and of pain in the back, which he called a sprain of the sacroiliac joint, for which he treated her for several months.

With the aid of admittedly skilled physicians and surgeons of both alleged combatants, it is to be hoped a speedy recovery of both without further complications may be effected shortly after this litigation is finally ended, and that by the encounter at least the chastity of both combatants has been vindicated.

It is the contention of the defendant that the uterine hemorrhages, the principal injury complained of by the plaintiff, were not the result of nor attributable to the alleged battery. While the evidence in such respect is frail and not very persuasive, yet, considering the portion of it most favorable to the plaintiff, as we are required to do, we think it sufficient to support a finding to the effect contended for by the plaintiff.

It also is claimed the court erred in submitting to the jury the question of punitive damages. There is evidence to show that the combat was not mutual; that the defendant was the aggressor; that she, angered by the note received by her, against the advice of her husband, marched down the sidewalk cursing and swearing, stormed and entered the

residence of the plaintiff, called her vile names, and beat and kicked her to the floor, necessitating hospital and medical care and the attention of a physician for several months thereafter. According to the testimony of the plaintiff, the character of the note was not such as to provoke an assault. The battery thus was without provocation or excuse. That the battery, viewed from plaintiff's evidence, was inexcusable, intentional, designed, wanton, and malicious may not be doubted. The court thus did not err in submitting the question.

The court, after charging the jury as to compensatory and punitive damages, charged that if the defendant "used unlawful unnecessary and improper force on the plaintiff and that such force so used by said defendant upon said plaintiff was the natural and approximate cause of the injuries complained of, then you are to find said issue in favor of the plaintiff." The issue referred to in the two preceding paragraphs of the charge relates to punitive damages, and thus the phrase in the quoted charge to find "said issue" in favor of the plaintiff, it is contended, has reference to such damages. We think that a fair deduction. The quoted charge standing by itself is faulty. It, by itself, does not embody sufficient elements to justify a finding of punitive damages. It further is faulty because of the use of the term "approximate" instead of "proximate." Lexically the terms have a different meaning. Courts, too, so regard them. *Ross* v. *Keaton Tire & Rubber Co.*, 57 Cal. App. 50, 206 P. 645; *Jones* v. *Southern Pac. Co.*, 74 Cal. App. 10, 239 P. 429.

In this connection the court also charged that if the plaintiff was at her residence, and if the defendant was the aggressor in committing the assault, and if the plaintiff used only such force as was necessary to protect her person, "that then and in that event you shall find that said assault was unlawful, unnecessary, wanton and malicious and that you shall find said issue (punitive damages) in favor of

the said plaintiff." Complaint also is made of that. The charge is open to the contention that if the jury found the defendant was the aggressor and made the assault at the plaintiff's residence, and if the plaintiff used no more force than was necessary to protect her person, then and in such event the court directed the jury that the assault on the part of the defendant as matter of law was unlawful, unnecessary, wanton, and malicious, and to award plaintiff punitive damages. The court in such particular misdirected the jury. By such charge the court made the question of punitive damages dependent upon only these propositions: Was the defendant the aggressor? Did she make the assault on the plaintiff at her home? And did the plaintiff use only so much force as was necessary to protect her person? Finding these in plaintiff's favor, the court told the jury, entitled her to punitive damages. That was error. Thereby the court invaded the province of the jury and itself decided what the jury ought to have been permitted to decide on laying before them by a proper instruction the necessary elements or factors to entitle the plaintiff to punitive damages, which was not done.

The court further charged that if the defendant went to plaintiff's house to pick a quarrel, then the defendant "as matter of law cannot plead justification for striking or kicking said plaintiff, and you shall find such issue in favor of said plaintiff." That charge also is complained of. It, too, is faulty and misleading. In the first place, justification was neither pleaded nor claimed by the defendant. What she averred and claimed was that she neither struck nor kicked the plaintiff at all, but that the plaintiff without cause or excuse and unlawfully so battered the defendant without any resistance on her part that she was bruised and disfigured and required to go on crutches for several months. In the next place, the court erroneously assumed that the defendant had struck and kicked the plaintiff, and then told the jury she was not justified in doing so if she went over

to plaintiff's house to pick a quarrel. The evidence as to whether the defendant struck or kicked the plaintiff at all, or committed any violence whatever on her, is in direct conflict.

Complaint also is made that outside of stating to the jury the substance of the counterclaim, the charge is wholly devoted to the complaint of plaintiff and to her alleged cause of action, and not anything stated with respect to the counterclaim, and that thus the issue presented by the counterclaim was not fairly put before the jury. The complaint, we think, is well founded. The court was required to charge as fully with respect to the counterclaim as to the complaint. The counterclaim presented an issue just as completely as did the complaint, and the one ought to have been as fully submitted as the other. That was not done.

It is further contended by the defendant that the verdict either as to compensatory or exemplary damages is not justified by the evidence; that the court arbitrarily, and on no proper basis, diminished it, still leaving it excessive; and that the plaintiff within the time ordered by the court not having elected to accept the judgment as modified, the order for a new trial became absolute after such stated time had expired. As is seen, the verdict was rendered for $1,640.00 for injuries, doctor bill and hospital expenses, $500.00 exemplary and costs." Judgment was entered for $2,140 and $49 costs. The court modified the judgment by "changing the amount from $2,000.00 to $1,333,34, and doctor's fees from $120.00 to $113.25," a total of $1,446.59. The court thus reduced the judgment $693.41. Upon what basis or calculation the court did that is not apparent. It is argued the court "wiped out the amount rendered for exemplary damages and deducted $193.41 from the amount rendered as general damages." But that is mere speculation. There is not anything in the record upon which to base it.

We, however, find it unnecessary to consider that, nor the question of whether the judgment as modified is still

so excessive as not to justify a verdict for such an amount, for the reason that when the plaintiff failed to make her election within the time stated in the order, failed to ask for or obtain additional time in which to make the election, made no showing and did not ask to be relieved from her default or noncompliance with the order, and more than two months thereafter, without leave of court and without any showing of any excuse for her default or noncompliance, served and field her election, the new trial became absolute and was so when the election was made. *Bonelli* v. *Jones*, 26 Nev. 176, 65 P. 374; *Brown* v. *Cline*, 109 Cal. 156, 41 P. 862; *Idaho Farm Development Co.* v. *Brackett*, 44 Idaho, 272, 257 P. 35; *Harrington* v. *Railway Co.*, 39 Mont. 22, 101 P. 149; *Adams Express Co.* v. *Gregg*, 23 Kan. 376; *Crew, Levick & Co.* v. *McCafferty*, 124 Pa. 200, 16 A. 743, 10 Am. St. Rep. 578; *Dembitz* v. *Traction Co.*, 147 App. Div. 588, 132 N. Y. S. 597; *Thompson* v. *Davison*, 113 Ga. 109, 38 S. E. 306; *Winningham* v. *Philbrick*, 56 Wash. 38, 105 P. 144; *Holtum* v. *Grief*, 144 Cal. 521, 78 P. 11.

It is claimed by respondent that *Harris* v. *Speirs*, 55 Utah, 474, 186 P. 445, supports her contention in this respect. We think not. There the prevailing party, not having made her election within the stated time and when but a day or two late by affidavits and on a hearing, made a showing of excusable neglect and was granted further time in which to make the election, which was made within such granted additional time. Here the election was made after the time had expired without a showing of excusable neglect and without leave of court to make it when it was made.

We think the judgment should be reversed and the cause remanded for a new trial. Such is the order, with costs to the appellant.

HANSEN, J., concurs.

THURMAN, C. J., concurs in result.

GIDEON, J.

I concur in the order reversing the judgment and remanding the cause for a new trial. I do so, however, upon one ground only, namely, that plaintiff failed to accept within two weeks the diminution of the judgment required by the trial court's order of February 19, 1927. That order is quoted in full by Mr. Justice STRAUP. It relates to the motion for a new trial. It is not happily worded, but, in my judgment, the fair import of the order is that upon failure to accept the reduction of the judgment by the plaintiff within the time designated therein a new trial resulted. The great weight of authority seems to be to the effect that a new trial granted upon condition becomes absolute upon failure to meet the condition. The authorities cited by Mr. Justice STRAUP support that view, and no authorities to the contrary are cited by respondent.

The trial court's instructions, considered as a whole, I think fairly submitted to the jury the issues of fact to be determined by them. At least the instructions were not so misleading or erroneous as to call for a reversal of the judgment.

CHERRY, J. I concur in the views expressed by Mr. Justice GIDEON.