[Civ. No. 8454.   Third Dist.   Jan. 4, 1955.]

DONACIANO QUIROGA et al., Respondents, v. SOUTH-
ERN PACIFIC COMPANY (a Corporation) et al.,
Appellants.

Devlin, Diepenbrock & Wulff for Appellants.

Thomas C. Perkins and Pelton & Gunther for Respondents.

SCHOTTKY, J.—Plaintiffs Quiroga and Aguirre commenced an action against defendant railroad company and the engineer, fireman and conductor of its train to recover damages for injuries received when a truck in which they were riding was struck by the train. The action was tried with a jury, and verdicts were returned awarding Quiroga $50,000 and Aguirre $20,000. Defendants' motions for a new trial and for judgment notwithstanding the verdicts were denied, and judgment was entered on the verdicts. Defendants have appealed from said judgment and from the order denying their motion for judgment notwithstanding the verdicts.

As grounds for a reversal of the judgment and order appellants urge the following contentions: 1. There was an utter failure to prove any negligence of defendants; 2. Any failure to give whistle or bell signals was not a proximate cause of the accident, because it is conceded that such signals would not have been heard even if given; 3. The trial court erred in admitting the testimony of Mrs. Merle D. Day that she didn't hear any whistle or bell signals.

It is a rule too well established to require the citation of authorities that, before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in

conflict therewith, it still appears that the law precludes the prevailing party from recovering a judgment. With this familiar rule in mind we shall give a brief summary of the evidence as shown by the record.

The respondents were employed as tomato pickers by Apolinar Solis, a labor contractor. At the time of the accident they were being transported in one of Apolinar Solis' trucks from the tomato field in which they had been working to the Solis camp for lunch. The truck was being driven by Anastasio Solis, who was employed by Apolinar Solis as a driver.

The respondents boarded the truck in the tomato field, and the truck then proceeded east to a dirt road which paralleled the railroad tracks. The east edge of this road was approximately 24.5 feet west of the westerly rim of the track. This road was not straight. It was entirely within the tomato field, unimproved and bumpy.

The truck, after reaching the dirt road, turned north (to its left) and proceeded at a speed of 6 to 10 miles an hour to Yolo County Road 25A. According to appellants' witness Thomas Vicari, the conductor, the distance from the center of the dirt road to the most westerly rail at the intersection of Yolo County Road 25A and the dirt road was approximately 50 feet, and the distance from the east edge of the dirt road to the said westerly rail was approximately 25 feet. On reaching Yolo County Road 25A the truck turned to the east (to its right) and approached the tracks. It slowed down before crossing the tracks and went over them at a speed not greater than a man would walk at a normal pace. The driver was watching the traffic on Highway 99W.

Highway 99W is a heavily traveled main highway. It is crossed by the railroad tracks at a point about 2,400 feet south of the 25A crossing. From the 99W crossing to the intersection of 99W and 25A it parallels the railroad tracks. The distance from the east rail to the west edge of Highway 99W and 25A is 38 feet. There is a stop sign protecting 99W at the 25A crossing, which is situated 18 feet east of the east rail.

The over-all length of the truck was 23 feet. The train struck the extreme rear end of the truck. Only the right hand side of the locomotive was damaged. An extremely strong north wind was blowing. Respondent Quiroga was sitting down in the bed of the truck with his hands covering his face because of the wind. Many of the laborers jumped from the truck just prior to the collision.

To support their claim that the whistle and bell were not sounded respondents called eight witnesses.

Mrs. Merle D. Day testified that she was in her home which was 987 feet from the crossing; that the wind was blowing from a northerly direction and that her home was northwest of the crossing; that no radio was playing in her home and that there was no noise in the house which would interfere with her hearing; that after the collision the locomotive which was proceeding north came to a stop on the crossing of her driveway about 300 feet from the house; that she came out of her house shortly after the collision and saw the locomotive on her driveway crossing; that she heard no bell or whistle.

Witnesses Lena Wilson, Stanley Westerberg, Jack Curnow, George Burger, and Rosemary Hurlhey were all occupants of a bus which had stopped at the crossing of the railroad tracks and United States Highway 99W, approximately 2,400 feet south of the crossing of Yolo County Road 25A, in order to permit the train to pass by. Of these witnesses, all but witness Lena Wilson testified that the bell or whistle was sounded as the train approached 99W. And of these witnesses, all but witness Westerberg testified he or she remembered no whistle or bell after the train passed the 99W crossing.

The witness Westerberg was asked the question: "Did you hear any whistle or bell after the train passed this crossing of 99W and the railroad?" to which he answered, "No."

Respondent Aguirre testified that he heard no bell or whistle. He was seated in the cab of the truck next to the right hand door. The window was open on the driver's side. No one in the cab was talking or otherwise distracting his attention. The truck was a 1949 Chevrolet and was going very slowly. It was not hauling a load of material. There is no evidence that it was rattling or making any noise.

Juan Castenada, another occupant of the truck, testified that he heard no whistle or bell. His hearing was good. Nothing covered his ears. He was standing erect in the bed of the open truck, and his head was higher than the sideboards.

In appellants' case the entire train crew was called. A. S. Hale, the fireman, testified that he was the fireman on the train in question which was known as the Sacramento-Gerber Local. He testified further substantially as follows: He turned on the automatic bell ringer about a quarter of a mile before the engine reached the 99W crossing and left

the bell on until after the accident. As the train approached the crossing with Road 25A, the engineer gave two series of crossing signals, each consisting of two longs, a short and a long. Approaching the 25A crossing, he noticed a truck in the tomato field to his left which was coming out of the dirt road that goes along parallel to the railroad tracks and then turned easterly onto County Road 25A. Approaching the railroad tracks, the truck almost came to a stop or slowed down like it was going to stop, and then, when the truck kept on moving, he told the engineer to "hold it." The head end of the truck was about 15 or 20 feet from the westerly rail when he told the engineer to put on the emergency brakes. The train was traveling about 35 miles per hour as it approached the 25A crossing and after he yelled "hold it" he saw the engineer's hand drop from the whistle cord to the brake valve. When the truck came into the dirt road he estimated it was about 300 feet from County Road 25A although he couldn't tell for sure. He judged that when he first saw this truck the head end of the engine was 500 or 600 feet from the truck and the train was possibly 900 feet from the 25A crossing. The truck looked to be going about 20 miles per hour when it was traveling on the dirt road. Just as the truck turned onto County Road 25A, and "just about straightened out," he saw men jump from the truck, at which time the front end of his engine was approximately three or four lengths or 120 to 160 feet from the crossing. The truck then appeared to slow down to stop when the engine was 80 to 100 feet from the crossing. When the head end of the truck was 15 or 20 feet from the first rail, it slowed down to maybe two miles an hour "like he was going to stop."

Arthur A. Davis, the engineer, testified that he had been a locomotive engineer of the Southern Pacific Company for 27 years; he was sitting in the engineer's seat on the right side of the cab. Approaching Highway 99W he gave two series of crossing whistles, a series being two longs, a short and a long. The engine bell was operating automatically. The automatic bell ringer was put on when approaching the 99W crossing and was not turned off until after the accident. When the train was about a car length past crossing 99W he started his first series of crossing signals for the Road 25A crossing, and he finished the last whistle of the second series when approximately 80 feet from crossing 25A, a "couple of car lengths." He was blowing the last series approaching

25A when the fireman yelled over to him "hold them" and he let loose of the whistle cord and dropped his hand to the emergency brake. At the moment the fireman told him to "hold them," he looked forward and the cab of the truck loomed up in front of the engine. The emergency immediately took effect and the train was brought to a stop so that the rear end of the caboose was about 80 feet or a couple of car lengths north of crossing 25A. He estimated the speed of the train as it approached the crossing 25A at 30 to 35 miles per hour. He further testified that there was a speed board in the vicinity of the crossing giving the authorized maximum speeds as 70 miles per hour for passenger trains, 50 miles per hour for steam freight trains and 79 miles per hour for streamline trains.

The other members of the train crew corroborated the testimony of the engineer and fireman as to the ringing of the bell and the blowing of the whistle.

Appellants also called Alexander B. Allen, who was the driver of the bus on which a number of witnesses called by respondents were riding. He testified that when his bus was approaching the 99W crossing he was discussing the oncoming train with the passengers on his bus who were jurors in a case being tried in the Superior Court of Yolo County, and their attention was called thereto. After the engine had crossed over 99W crossing, Allen acted in accordance with his habit of watching cars and seeing from what different railroads they came, and he heard the whistle sounded as the engine was approaching the crossing of County Road 25A. He thought at the time that the engineer was laying on it; it sounded to him like the engineer was playing with a new toy and you could see the steam rising from it. After the train had cleared the Road 25A crossing, and he proceeded northerly on highway 99W, he saw a cloud of dust which he thought was a wind blowing "across there." He further testified that when he got out of the bus at the accident the bell on the standing engine was still "dinging."

Appellants contend that there was no substantial evidence of any negligence on their part and that their motion for a directed verdict should have been granted. They argue that the evidence of respondents was negative testimony which did not contradict or tend to contradict the positive testimony given against it by appellants' witnesses. They assert that the testimony of their witnesses was positive testimony that a warning signal was given and that this overcomes all of the

testimony by several of respondents' witnesses that no warning bell or whistle was heard before the accident.

Respondents in reply contend that there is substantial evidence in the record to support the implied finding of the jury that appellants were negligent. They refer to section 7604 of the Public Utilities Code which provides that:

"A bell, of at least twenty pounds weight, shall be placed on each locomotive engine, and shall be rung at a distance of at least 80 rods from the place where the railroad crosses any street, road, or highway, and be kept ringing until it has crossed the street, road, or highway; or a steam whistle, air siren, or an air whistle shall be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the street, road or highway. . . . The corporation is also liable for all damages sustained by any person, and caused by its locomotives, train or cars, when the provisions of this section are not complied with."

They point to the testimony of several witnesses who heard no bell or whistle, some of these witnesses being occupants of the truck, some being in a bus traveling along Highway 99W, and one being a woman who was in her house at the time, about 1,000 feet from the crossing. Respondents argue further that the record shows that the fireman was negligently inattentive in failing to observe the truck or in relaying a prompt warning to the engineer, in that the truck was struck in the rear, showing that it had almost cleared the track and had been in view for some time in approaching and crossing the tracks. They argue further that the engineer was also negligently inattentive.

The rule as to the weight and sufficiency of negative testimony is well stated in *Jones* v. *Southern Pac. Co.*, 74 Cal.App. 10, at page 26 [239 P. 429], as follows:

"In this connection it may be said that negative testimony of witnesses who are in a position to hear and to observe, who declare they heard no signals and saw none, even as opposed to positive testimony that signals were given, presents a question to be submitted to the jury, and it has been held such negative evidence may be sufficient to sustain a verdict. (Jones on Evidence, sec. 898; vol. 23, C.J., sec. 1787, where many cases upon the question are cited.)

"We find in *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 P. 709], a holding which in principle we deem applicable, as follows: 'But we think it must be held that there was enough in the evidence to justify the jury in finding

that the motorman was negligent in not giving proper warning, by bell or whistle, of his approach. It is true that the only evidence that he did not give such warning was negative, consisting of the statements of the people in the automobile that they heard no signal. But, if they were so situated, as they undoubtedly were, as to have been able to hear a bell or whistle sounded from the motor car, their failure to hear is some evidence that no such signal was given. (Citing cases.) That there was positive testimony to the contrary does not conclusively establish that a warning was given. It creates merely a conflict of testimony, which is finally resolved, so far as this court is concerned, by the verdict of the jury. This circumstance alone supports the finding of negligence.'

"In *Exposita* v. *United Ry. Co.*, 42 Cal.App. 320 [183 P. 576], wherein a verdict for defendant was returned, the court, in speaking of negative testimony, held: 'The defendant offered the only kind of evidence available in the nature of the case. Its negative character affected its weight and sufficiency. Conclusive proof is never necessary to justify the verdict of a jury. The jury had the right to draw its own inference from the evidence.' " (See also *Lahey* v. *Southern Pac. Co.*, 16 Cal.App.2d 652 [61 P.2d 461].)

■ Appellants do not dispute this well settled rule but argue that it does not apply to the instant case because, they contend, the witnesses who gave this negative testimony were not so situated that they could hear the signals. Appellants point to the evidence of the strong north wind which they say prevented the witnesses of respondent from hearing the train. However, the record shows that respondent Aguirre and the witness Castenada were in the truck at the crossing and both testified that they heard no bell or whistle; also that the passengers in the bus were south of the 25A crossing and that the wind was blowing in their direction and they testified that they heard no bell or whistle after the train passed crossing on highway 99W; and Mrs. Day, who testified that she heard no bell or whistle, was in her home 987 feet from the crossing, with no radio going or noise in her home to interfere with her hearing. With such testimony in the record we believe that it was for the jury to determine whether the said witnesses of respondents were in a position to hear the sound of any bell or whistle, and that the implied finding of the jury that they were in a position to hear and did not hear any bell or whistle because no bell was rung or

whistle blown as the train approached the 25A crossing is supported by the evidence.

Appellants also contend that any failure to give a whistle or bell warning was not a proximate cause of the accident because, they assert, it is conceded that such signals would not have been heard even if given. In support of this they rely on the weather, in that the strong north wind prevented the respondents from hearing the train; and they state: "Therefore, the record shows that nobody (in or about the crossing) heard the whistle until the engine was 90 feet from the crossing or at the time of the collision because of the strong north wind, and hence, an earlier blowing of the whistle would not have been heard." Respondents in reply deny that they have conceded or do concede that the signals would not have been heard if given, and contend that the question of whether or not failure to give timely warning was a proximate cause of the accident was properly left to the jury to decide. We agree with respondents.

There is no merit in appellants' final contention that the court erred in admitting the testimony of respondents' witness Mrs. Day that she did not hear any whistle or bell signals. Mrs. Day lived approximately 1,000 feet north of the crossing. She testified that there was a strong north wind blowing that day and that shortly before noon she was in the kitchen on the north side of her house; she did not hear the crash of the accident. Appellants objected to her testimony on the ground that no proper foundation had been laid because it had not been shown that the witness was in a position in which to hear nor that her attention had been directed to the train. The court correctly overruled the objection, since it is a matter of common knowledge that a train whistle is audible at 1,000 feet even with a strong wind blowing.

The judgment and order are affirmed.

Van Dyke, P. J. and Peek, J., concurred.

A petition for a rehearing was denied January 25, 1955, and appellants' petition for a hearing by the Supreme Court was denied March 3, 1955.