[Civ. No. 8382.   Third Dist.   Mar. 30, 1955.]

LOUIS   MERLINO   et  al.,   Appellants,   v.   SOUTHERN
    PACIFIC   COMPANY   (a   Corporation)   et   al.,   Re-
    spondents.

Bradford, Cross, Dahl & Hefner for Appellants.

Devlin, Diepenbrock & Wulff for Respondents.

SCHOTTKY, J.—Plaintiffs above named commenced an action against defendant Southern Pacific Company and its defendant employees for wrongful death and injuries resulting from a crossing collision on April 29, 1951, between an automobile and a railroad train, in which collision Frances Merlino and Susan Belle Ketelsen, passengers in the automobile, were killed, and plaintiff Emil Ketelsen, Jr., received personal injuries. Susan Belle Ketelsen was the wife of plaintiff Emil Ketelsen, Jr., and Frances Merlino was the wife of plaintiff Louis Merlino and the sister of Ketelsen. The Ketelsens had two minor children and Mrs. Merlino had two dependent minor children by a prior marriage.

At the close of plaintiffs' case defendants moved for a nonsuit, which motion was denied. Defendants introduced evidence, and after both sides had rested their case defendants' motion for a directed verdict was granted. Judgment was entered on the directed verdict and plaintiffs have appealed from said judgment.

It is the established law of this state that the power of a trial court to direct a verdict is precisely the same as the power of the court to grant a nonsuit. As stated in *Estate of Lances,* 216 Cal. 397, at page 400 [14 P.2d 768] :

". . . A nonsuit or a directed verdict may be granted

'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (*Newson* v. *Hawley,* 205 Cal. 188 [270 P. 364]; *Perera* v. *Panama Pacific Intl. Exp. Co.,* 179 Cal. 63 [175 P. 454]; *Estate of Sharon,* 179 Cal. 447 [177 P. 283]; *Estate of Gallo,* 61 Cal.App. 163, 175 [214 P. 496]; 24 Cal.Jur., pp. 912-918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Scofield Eng. Const. Co.,* 203 Cal. 224, 228 [263 P. 799].)''

■ Upon appeal from a judgment based on a directed verdict it is the duty of the reviewing court to consider the evidence and the inferences which reasonably may be drawn therefrom, in the light most favorable to the plaintiff. That other evidence may be found in the record which would support equally reasonable inferences to the contrary is of no consequence. Bearing in mind these familiar and well settled principles we shall summarize briefly the evidence introduced in the trial court.

The accident occurred at Swanston crossing in Sacramento County. Swanston Road crosses a double track main line of the Southern Pacific Company and two switch tracks. From the west, the direction in which Ketelsen's automobile approached this crossing, the tracks were in this order: First, the southbound main, second, the northbound main, and then after the distance of several feet the two side tracks. This crossing was protected by two flasher light signals, one in the southwest corner of the crossing and another in the northeast corner, the latter being between the northbound main and the side tracks. These signals were installed pursuant to an order of the Railroad Commission of the State of California (now the Public Utilities Commission) dated March 15, 1937, which apparently was still in full force and effect on the date of the accident. The flasher type of signal has two lights each of which is enclosed by a cylinder with red glass on each end, so that the light

can be seen from both directions. When one light goes on the other goes off, producing a flashing effect. A bell also clangs as the light flashes. To the west signal post is affixed a sign indicating four railroad tracks at this crossing.

On April 29, 1951, shortly before 1 o'clock p. m. (standard time), Ketelsen was driving his car in an easterly direction on Swanston Road just west of the railroad crossing. Riding in the car with him were his wife and sister. As Ketelsen approached the railroad crossing he observed a freight train about a block away coming from the north and traveling towards Sacramento on the westerly set of rails. He stopped his car so that the front bumper was located about even with the broad painted double white lines extending across his lane of travel, which lines were about 7 feet from the most westerly rail. The westerly flasher signal was located about 14 feet west of the west rail of the crossing, so that Ketelsen's position was such that he could not see the flasher signal lights operating, he was sitting just about opposite the signal, and he stated that he did not know if they remained operating after he stopped his vehicle and the train crossed the road. The southbound freight crossed at an estimated speed of 15 to 25 miles per hour. Ketelsen testified that the noise of the passing train made it impossible for him to hear the intermittently sounded bell of the flasher signal and he did not know if it so sounded while he waited for the freight to pass.

As the caboose of the passing southbound freight approached and cleared the crossing a distance of 30 feet to the south edge of Swanston Road, Ketelsen placed his car in low gear and pulled slowly forward. At that time he listened for, but heard no signals or warning bells. He first looked to his right; saw no approaching northbound trains; but could see only approximately 30 feet to the rear end of the caboose on the southbound tracks and, because of the caboose, naturally could see only a little farther to the south on the easterly or northbound set of tracks. He then looked to his left to observe the approach of any possible southbound trains. Next he looked at the signal crossing light at the northeasterly side of the railroad crossing and observed that both of the red lenses of that signal light were somewhat illuminated by the reflection of the sun. They were not flashing, indicating to him that the signal was not in operation, and upon that indication he proceeded to go slowly forward.

As the front of his automobile about reached the easterly set of tracks Mrs. Ketelsen screamed. Ketelsen looked quickly to his right and saw a northbound railroad engine approaching him on the easterly set of rails traveling toward Roseville. There was neither time to stop nor accelerate. He had time only to look at the approaching engine, turn his gaze back to the highway and freeze at the steering wheel of his automobile. Two seconds after the scream the crash followed in which both Mrs. Ketelsen and Frances Merlino lost their lives and Ketelsen sustained severe injuries.

There was evidence from appellants' witnesses that the northbound train had sounded a series of whistle blasts while coming around the Elvas curve, which curve ended about one-half mile south of the crossing.

Mr. J. Franklin, driver of the third car stopped on the west side of the crossing and the second one behind Ketelsen, testified that he heard the northbound train sound its whistle when it was rounding the curve about one-half mile to the south, that he heard no sounding of any whistle from that time on until the accident occurred, that he estimated the speed of the northbound train to be 35 to 40 miles per hour, and that the caboose of the southbound train was still on the crossing when Ketelsen's car started to creep forward.

Mrs. Vivian Franklin, wife of Mr. Franklin, who was riding in the same car, testified that she heard the northbound train sound its whistle when it was at the curve, that she did not hear any subsequent whistle from that time until the accident occurred, and that she estimated the speed of the train to be 45 to 50 miles per hour.

Mrs. Rena Whitton, who was the driver of the first vehicle stopped on the east side of the crossing, testified that she first saw the northbound train when it was about a block (about 400 feet) away from the crossing; that she estimated its speed at 50 miles per hour because it seemed to be going twice as fast as the southbound freight, which she estimated to be traveling at 25 miles per hour; that the northbound engine blew its whistle when about one-half block (about 200 feet) from the crossing; and that Ketelsen's car crept upon the track right after the caboose of the southbound train had cleared. She admitted that she was a poor judge of speed.

Mr. John Perkins, father of Mrs. Whitton, who was riding with her, stated that he heard the northbound engine sounding its whistle when it was about 50 to 60 yards from the crossing, that it was a steady blast until it hit the car, and

that he judged the caboose had cleared about 20 feet when Ketelsen started to cross the tracks.

There was considerable testimony adduced by respondents which contradicted the testimony of appellants' witnesses. The members of the train crew testified that both the whistle and the bell were rung simultaneously and continuously from the whistle post, located one-quarter of a mile from the crossing, up to and including the very moment of impact. They testified also that they were aware of the presence of the southbound freight as their northbound engine neared the crossing, but that no special attention was directed to that train. Neither the engineer nor fireman made any estimate as to whether their engine would approach and pass the crossing just at the moment the southbound train cleared it, nor did they feel any duty to consider that factor as the respondent company had no rules regarding such a circumstance because the northbound line was operated independently of the southbound line.

Three other witnesses, Glen W. Negle, Margaret Negle and Kenneth Negle, who were parked immediately behind the Ketelsen car on the west side of the railroad tracks, testified that they heard the whistle and bell ringing as the northbound engine approached.

Appellants contend that in granting respondents' motion for a directed verdict the trial court failed to give due weight to the well settled rule that a directed verdict is not proper unless, after taking all the evidence in the light most favorable to the plaintiff, and all inferences reasonably drawn therefrom, there is nothing upon which a finding in favor of the plaintiff could be supported. Appellants contend that the evidence of respondents' negligence is abundant, in that they violated section 486 of the Civil Code (now Pub. Util. Code, § 7604), in that respondents negligently maintained and operated the flasher warning signals, in that respondents were negligent in allowing two trains to approach the crossing from opposite directions without regard to the clearing distance of one train before the other train got to the crossing, in that the northbound engine was being negligently operated at a high rate of speed, and that there was proximate causation. Appellants also contend that Ketelsen was not contributorily negligent as a matter of law, and even if he were it does not affect the rights of all the other parties to this action.

Section 486 of the Civil Code (now Pub. Util. Code,

§ 7604) requires the sounding of a whistle at intervals or the continuous ringing of a bell for a distance of 80 rods before reaching the crossing and until the street, road or highway has been crossed. Proof of failure to comply with this section has been held to be prima facie negligence on the part of the railroad company, as stated by the court in *Eastman* v. *Atchison, T. & S. F. Ry. Co.*, 51 Cal.App.2d 653, at pages 660-661 [125 P.2d 564]:

"It is doubtless the law that failure to comply with the regulations prescribed by section 486 of the Civil Code as to ringing the bell and blowing the whistle of a railroad train upon approaching a street crossing is prima facie evidence of negligence on the part of the railroad company (*Parker* v. *Southern Pac. Co.*, 204 Cal. 609 [269 P. 622]; *Orcutt* v. *Pacific Coast Ry. Co.*, 85 Cal. 291 [24 P. 661]); and that where the evidence is conflicting as to whether the train crew complied with such statutory requirement, the implied finding of the jury adverse to the railroad company is binding on appeal. [Citing cases.] Furthermore, the courts have held that if a witness is in a position to hear the bell or the whistle of the locomotive and he testified he heard neither, such testimony is sufficient to raise a conflict with positive testimony to the contrary that such warnings were given. [Citing cases.]" (See also *Jones* v. *Southern Pac. Co.*, 74 Cal.App. 10, 26 [239 P. 429]; *Quiroga* v. *Southern Pac. Co.*, 130 Cal.App.2d 93, 99 [278 P.2d 80].)

Bearing these well settled principles in mind we are satisfied that there is sufficient evidence in the record to support a finding that such warning signals were not given by respondents as required by the statute. The jury was not required to accept at its face value the testimony of respondents' witnesses that the proper warning signals were given, but could, instead, believe the testimony of appellants' witnesses to the effect that no whistle or bell was heard by any of them from the time that the northbound train came around the curve, one-half mile to the south of the crossing, until such train was within one-half block, or about 200 feet, of the crossing. Ketelsen at no time heard any whistle or bell from the northbound train, Mr. Franklin and Mrs. Franklin never heard any subsequent whistle signals after they had heard the first ones as the train was rounding and coming out of the Elvas curve, Mrs. Whitton heard such train's whistle for the first time when it was about one-half block, or 200 feet, from the crossing, and Mr. Perkins heard

a whistle sound from such train only when it was about 50 to 60 yards from the crossing and that it was a steady blast until the train hit the automobile. If, as we have concluded, there was sufficient evidence to support a finding that the warning signals were not given as required by said section 486 of the Civil Code, then such failure was prima facie evidence of negligence on the part of respondent Southern Pacific Railroad Company.

Appellants argue also that in addition to the violation of said section 486, respondents were negligent in the speed and manner of operation of the northbound train in approaching the crossing occupied by the southbound freight train proceeding in the opposite direction. Appellants' testimony is to the effect that the northbound train was proceeding at the rate of 35 to 50 miles per hour, that the southbound freight was passing the crossing at quite a slower rate of speed, 15 to 25 miles per hour, and that the crew of the northbound train knew of the presence of the southbound train but did nothing in regard to regulating the speed of their train so that it would not reach the crossing as the southbound freight cleared it. Appellants argue that under these circumstances the jury could well find that respondents were negligent in operating the northbound train at such a rate of speed when approaching this crossing, or that in the exercise of due care they should have controlled the speed so that they would not have reached the crossing in such a short space of time after the southbound train had cleared, and that this is so, regardless of the conduct of the railroad company in operating one track independently of the other.

Appellants concede that it is true that no given rate of speed is, in and of itself, negligence in the absence of statute or ordinance, but cite the case of *Young* v. *Pacific Elec. R. Co.*, 208 Cal. 568, where the court said at page 572 [283 P. 61]:

"With reference to the alleged excessive speed of the car, respondents contend that, in the absence of a regulatory statute or ordinance, a railway company may ordinarily run its trains at such speed as it sees fit, and that a charge of negligence cannot be predicated on that rate of speed unless there are attendant circumstances which make such speed negligence. They also cite authorities as to the right of a railroad company to operate its trains at a high rate of speed in country districts. While it is true that no rate of speed

is negligence *per se* in the absence of a statute or ordinance, it does not follow that a railroad company will be permitted to run its trains under all conditions at any rate of speed it may choose. It must regulate its speed with proper regard for the safety of human life and property, especially when running through towns and cities. The character of a crossing, it has been well reasoned, affects the duty of the railroad company toward travelers upon the public highway, and its trains must pass over dangerous crossings at a less rate of speed proportionate to the danger."

Respondents in reply state:

"In other words, the Young case merely recognizes that there may be circumstances which, considered with speed, may constitute negligence. No such circumstances were present in the case at bar. This was an unobstructed country crossing, protected by automatic signal devices. Secondly, speed became immaterial when the plaintiffs adduced evidence that these flasher light signals were operating and the whistle signals from the train were given."

It is apparent that respondents are assuming that the evidence shows without conflict that the proper warning signals were given and also that the flasher light signals were operating, and while it is true that there was strong evidence that the warning signals were given and that the flasher light signals were operating we cannot hold, in view of the record, that there was no conflict in the evidence upon these points, as we are convinced that these were matters for the determination of the jury.

We believe that there was sufficient evidence to support a finding that respondents were negligent in the operation of said train at said time and place, and will now proceed to consider whether the record would support a finding that such negligence was a proximate cause of the damages sustained by appellants. If, as we have hereinbefore pointed out, there was sufficient evidence to support findings that respondents did not give the warning signals required by section 486 of the Civil Code, and also that the train was operated at an excessive rate of speed under the circumstances, then we are satisfied that the question of proximate cause was one to be determined by the jury. ▮ The question of proximate cause is generally one for the trier of the fact and it is only when reasonable minds cannot differ on the question that a court is justified in taking that question from the trier of the fact. ▮ Bearing this familiar rule in mind we believe that the trial court erred in con-

cluding that, as a matter of law, respondents were guilty of no negligence that constituted a proximate cause of the accident.

There remains to be considered the question of whether appellant Ketelsen was guilty of contributory negligence as a matter of law. The trial court in ruling on respondents' motion for a directed verdict stated that he was, and respondents contend that the negligence of appellant Ketelsen was the sole proximate cause of the accident. If appellant Ketelsen was guilty of contributory negligence as a matter of law, the directed verdict was properly granted as to him, and if his negligence was the sole proximate cause of the accident then the motion for a directed verdict was properly granted as to the other appellants.

■ As stated in *Anthony* v. *Hobbie*, 25 Cal.2d 814, at page 818 [155 P.2d 826]:

"The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. ■ The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing cases.] ■ Finally, the plaintiff is not bound by the testimony elicited from defendant under section 2055 of the Code of Civil Procedure. On appeal he may rely upon the portion of such evidence that is favorable to him and disregard the unfavorable portion in support of a judgment in his favor or in his attack on a directed verdict."

■ In the instant case appellant Ketelsen's testimony was that as the caboose of the passing southbound freight approached and cleared the crossing a distance of 30 feet to the south edge of Swanston Road, Ketelsen placed his car in low gear and pulled slowly forward. At that time he listened for, but heard no signals or warning balls. He first looked to his right, saw no approaching northbound

trains, but could see only approximately 30 feet to the rear end of the caboose on the southbound tracks and, because of the caboose, naturally could see only a little farther to the south on the easterly or northbound set of tracks. He then looked to his left to observe the approach of any possible southbound trains. Next he looked at the signal crossing light at the northeasterly side of the railroad crossing and observed that both of the red lenses of that signal light were somewhat illuminated by the reflection of the sun. They were not flashing, indicating to him that the signal was not in operation, and upon that indication he proceeded to go slowly forward. As the front of his automobile about reached the easterly set of tracks Mrs. Ketelsen screamed. Ketelsen looked quickly to his right and saw a northbound railroad engine approaching him on the easterly set of rails traveling toward Roseville. There was neither time to stop nor accelerate. He had time only to look at the approaching engine, turn his gaze back to the highway and freeze at the steering wheel of his automobile. Two seconds after the scream the crash followed. The witness John Perkins testified that he judged that the caboose had cleared the crossing about 20 feet before appellant Ketelsen started across the crossing.

Respondents contend that Ketelsen exercised no care whatsoever, that he blindly drove upon the crossing without looking just as the caboose cleared, and that he was therefore guilty of contributory negligence as a matter of law. Respondents contend that not only should the testimony of Ketelsen and Mr. Perkins be considered on this point, but also that of Mrs. Whitton and Mr. Franklin, who, in effect, stated that Ketelsen's car began creeping toward the crossing as the caboose was upon it and that as soon as the caboose passed, Ketelsen immediately drove upon the tracks and was struck by the northbound train.

However, under the well settled rules governing appellate tribunals it was for the trier of facts, in this instance the jury, to weigh the testimony of the witnesses and to decide the question of whether or not, under all of the circumstances shown by the evidence, appellant Ketelsen was guilty of contributory negligence. We do not believe that it can be held as a matter of law that appellant Ketelsen did not exercise some care, and it was a question for the jury to decide whether or not his conduct amounted to contributory negligence. The rule is well stated in the recent case of *Lloyd* v. *Southern Pac. Co.*, 111 Cal.App.2d 626, 634 [245 P.2d 583] (hearing denied) :

"The Spendlove case had first been before the District Court of Appeal (177 P.2d 27) where the judgments of non-suit were affirmed and where four cases were cited by the court in support of its holding that the driver was guilty of contributory negligence as a matter of law under the look and listen rule. All of them are now relied on by these appellants. (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788] ; *Heroux* v. *Atchison, T. & S. F. Ry. Co.*, 28 Cal.App.2d 401 [82 P.2d 620] ; *Guyer* v. *Pacific Elec. Ry. Co.*, 24 Cal.App.2d 499 [75 P.2d 550] and *Jones* v. *Southern Pac. Co.*, 34 Cal.App. 629 [168 P. 586].) The Supreme Court, however, in reversing the judgments of nonsuit, distinguished those cases. It thus appears that that court has now adopted or restated the rule of the Koch case, and we of course are bound to follow it if there is any evidence in this record that Lloyd exercised *some* care—whatever the quantum thereof. He testified that when he saw the 'RRX' sign on the surface of the highway he took his foot off the accelerator and looked in both directions. Under the rule of the Spendlove case this seems to be sufficient to make the question one for the jury. The same rule was followed in the Startup case, *supra*, 29 Cal.2d 866, and by this court in *Correa* v. *Davis*, 69 Cal.App. 180, 182 [230 P. 984]. In *Andre* v. *Allyn*, 84 Cal.App.2d 347, 354 [190 P.2d 949], the court in speaking of the Spendlove case says: 'This last decision illustrates the fact that in the last few years the tendency of the Supreme Court has been away from the stricter view of preceding years, where frequently contributory negligence was established as a matter of law, to the present situation in which such cases "are rare." (See *Anthony* v. *Hobbie, supra* [25 Cal.2d 814, 818 (155 P.2d 826)].)' " (See also *Jansen* v. *Southern Pac. Co.*, 112 Cal.App.2d 833, 841[ 247 P.2d 581].)

In view of the foregoing we are of the opinion that the trial court erred in directing a verdict in favor of respondents. The questions of negligence, proximate cause and contributory negligence should have been submitted to the jury.

No other points raised in the briefs require discussion.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 27, 1955, and respondents' petition for a hearing by the Supreme Court was denied May 25, 1955.