[Civ. No. 8353. Third Dist. Mar. 26, 1958.]

ROWLAND F. SWEET, Appellant, v. EARL H. MARK-
WART et al., Respondents.

Earl D. Desmond and E. Vayne Miller for Appellant.

J. A. Montgomery, Jr., Lloyd A. Phillips, Jr., Brobeck, Phleger & Harrison and Devlin, Diepenbrock & Wulff for Respondents.

SCHOTTKY, Acting P. J.—This is an appeal by Rowland F. Sweet from judgments in favor of respondents in an action to recover the sum of $24,980.05 allegedly due and unpaid.

By his second amended complaint appellant Sweet sued Earl Markwart, C. W. Howard (Helen Howard, executrix of the last will and testament of C. W. Howard was substituted as the defendant before the trial of the action), and the American Trust Company. The complaint was in five counts, four common counts and a fifth count which alleged that during the years 1946 and 1947 Earl H. Markwart entered into six separate contracts to construct and install certain industrial cleaning equipment and aircraft cleaning equipment at prices aggregating $385,860.71; that before Markwart entered into these contracts he made an agreement with plaintiff whereby plaintiff was to aid in obtaining these contracts and to perform executive, field, and engineering services necessary in the performance thereof; that on completion of the contracts plaintiff was to receive 40 per cent of the net profits of the contracts; that while these contracts were still uncompleted, Markwart by written agreement assigned all his assets, including his interest in the six contracts, to defendants Howard and the American Trust Company; that shortly thereafter Howard and the American Trust Company orally agreed

with plaintiff that he was to continue the contract with Markwart and that he would be paid the 40 per cent of the net profits of the contracts as agreed; that plaintiff has fully performed his part of the agreement and that Howard and the American Trust Company have refused to pay plaintiff his share of the profits which were alleged to be $24,980.05. The various defendants entered denials to the complaint and the cause proceeded to trial. At the conclusion of the trial defendants' motions for nonsuits were granted, (1) to Howard and the American Trust Company on the first count of the complaint which was a common count for work and labor performed at the request of the defendants; (2) to Markwart, Howard and the American Trust Company on the second count which was for money due upon a book account; (3) to Markwart on the third count which was a common count for money had and received; and (4) to the American Trust Company and Howard on the fourth count which was a common count for services performed at the defendants' request. (Markwart was not named as a defendant in this count or in the fifth count of the complaint.) Thereafter, directed verdicts were ordered in favor of Markwart on the first count, the American Trust Company on the third count and Howard on the third and fifth counts. The sole remaining cause of action, the fifth which was on the oral contract, was submitted to the jury against the American Trust Company only. After some deliberation the jury arrived at a verdict against the American Trust Company for $24,980.05. The verdict was signed by the foreman, but the jury, instead of returning to the courtroom with the verdict, went to dinner where one juror suffered a heart attack and died. The trial court refused to accept the verdict of the jury upon its return, and the jury was discharged. Thereafter, purportedly acting under the provisions of section 630 of the Code of Civil Procedure, the court entered judgments in favor of the various defendants on the counts not nonsuited.

Appellant thereafter appealed from the judgments of nonsuit which were ordered and from the judgment in favor of Markwart on the first cause of action; from the judgment in favor of Howard on the third and fifth causes of action; from the judgments in favor of the American Trust Company on the third and fifth causes of action; and from an order denying appellant's motion to have the court enter and record the written verdict of the jury.

The appeals from the orders granting nonsuits as to Howard and the American Trust Company were ordered dismissed by this court on February 2, 1953. (*Sweet* v. *Markwart,* 115 Cal.App.2d 735 [252 P.2d 751].) On September 27, 1956, this court dismissed the appeal from the order denying the motion to have the trial court enter and record the written verdict of the jury as it was not an appealable order since it was made before judgment. Appellant has abandoned his appeal from the order granting a nonsuit to Markwart. The following questions are presented on this appeal:

1. Whether the trial court erred in directing a verdict in favor of Howard on the third count of the complaint which was a common count for money had and received, and on the fifth count which was on an express contract.

2. Whether the trial court erred in granting a directed verdict in favor of the American Trust Company on the third count.

3. Whether the trial court erred in entering judgment in favor of the American Trust Company on the fifth count.

4. Whether the trial court erred in directing a verdict in favor of Markwart on the first count which was a common count for work and labor performed at the request of the defendant.

It is the law in this state that the power of a trial court to direct a verdict is precisely the same as the power of the court to grant a nonsuit. (*Merlino* v. *Southern Pac. Co.,* 132 Cal.App.2d 58 [281 P.2d 583].) "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given. . . . Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.'" (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768].)

"Upon appeal from a judgment based on a directed

verdict it is the duty of the reviewing court to consider the evidence and the inferences which reasonably may be drawn therefrom, in the light most favorable to the plaintiff. That other evidence may be found in the record which would support equally reasonable inferences to the contrary is of no consequence." (*Marlino* v. *Southern Pac. Co.*, *supra*, p. 60.)

The evidence produced at the trial, viewed in the light most favorable to the appellant, disclosed that in 1945 Markwart, who was in the steel construction business, and Sweet entered into an oral agreement whereby Sweet, who had developed certain aircraft engine cleaning equipment which eliminated 95 per cent of the hand labor in cleaning engine parts, agreed to work for Markwart in a new branch of Markwart's business which was to consist of a division which would engage in the sale and design of the cleaning equipment. Sweet was to receive 40 per cent of the net profits of the division after actual costs of material, labor, taxes and 25 per cent of the cost of labor and materials for overhead were deducted from the amount received on each contract. Sweet was to solicit business, design the equipment, and supervise the manufacture and the installation of the equipment. This agreement continued. In December, 1946, Markwart, who was in financial difficulties and who was assigning all sums due or thereafter to become due him to the American Trust Company, hired C. W. Howard as his general manager. Howard had power to hire and fire the heads of the various departments, but according to Markwart did not discharge anyone until after April 30, 1947. Howard was informed of Sweet's agreement with Markwart. On April 11, 1947, Howard, by a letter, terminated the agreement and thereafter Sweet, who had been on a drawing account, received a regular salary check with deductions made for federal and Social Security taxes. Sweet testified that after he received the letter he spoke to Howard and that Howard told him that the letter abrogated the agreement for future jobs but that the contracts already obtained by Sweet (including the six which are the basis of this lawsuit) were not affected by the termination of the agreement.

On April 30, 1947, Markwart executed an agreement with Howard, as trustee, and the American Trust Company whereby Markwart transferred all his assets to Howard as trustee, for the purpose of liquidating the business and paying certain named creditors and satisfying the bank's obligations. The agreement provided that the trustee would use his best efforts

to complete all executory contracts and work in progress and endeavor to realize and salvage as much as possible out of the business. Shortly after this agreement was signed, Sweet and Howard went to San Francisco and saw a Mr. Hammond, a vice president of the bank, who was in charge of the liquidation of the loans made to Markwart. A Mr. Davenport, another bank employee, was also present. Sweet discussed the April 30, 1947, agreement with them. He was concerned because the agreement provided that the bank could remove the trustee at any time and Sweet wanted to know to whom he would look if Howard were removed. During this conversation Sweet discussed the profits which were to be made on one of the contracts which Sweet claims he is entitled to share. Sweet showed Hammond how he computed the profits. His agreement with Markwart was discussed generally. Hammond told Sweet that he would be paid his 40 per cent of the net profits of the six contracts but that the agreement would not apply to any future jobs which were secured.

After the complaint was filed Sweet had Howard's deposition taken, and Sweet's deposition was also taken. The trial court ruled that Howard's deposition could not be used against the estate. All conversations between Howard and other parties were limited in use to parties other than the estate.

We think that the trial court erred in ordering directed verdicts in favor of the American Trust Company and the estate of Howard on the third cause of action which was a common count for money had and received. ▮▮ ''Although such an action is one at law, it is governed by principles of equity. . . . It may be brought '. . . wherever one person has received money which belongs to another, and which ''in equity and good conscience,'' or in other words, in justice and right, should be returned. . . .' '' (*Mains* v. *City Title Insurance Co.*, 34 Cal.2d 580, 586 [212 P.2d 873].) ▮▮ An assignee for the benefit of creditors may in his discretion and according to what he considers to be in the best interest of the creditors perform or refuse to perform the assignor's part of an executory contract. The assignee must exercise ordinary prudence and good faith in dealing with the assignor's contract obligations, and where he induces the other party to perform or otherwise reaps the benefit of a contract he must assume its obligations. (6 C.J.S., Assignments for Benefit of Creditors, § 190.) ▮▮ The evidence produced at the trial

was sufficient to indicate that both of the assignees knew of the Sweet-Markwart agreement; that they both told Sweet to go ahead; that Sweet remained on the job and supervised completion of the six contracts; that the money was paid to the assignees on the contracts. Under such circumstances it would be inequitable to deprive Sweet of the rewards due him. The fact that Howard died prior to the trial of the action would not prevent Sweet from proving his cause of action against the estate. Howard's deposition was taken and read into evidence by Sweet's attorney though the court would not permit it to be used against the estate. This was error. In *Evans* v. *Gibson*, 220 Cal. 476 [31 P.2d 389], plaintiff sued the decedent and took his deposition. Decedent died prior to the trial. At the trial plaintiff introduced the deposition and was allowed to testify against the estate. Judgment was obtained against the executrices of the decedent's estate, who, on appeal, contended that much of the testimony of the plaintiff was inadmissible under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure. On this point the Supreme Court indicated that when the deposition of a party is taken prior to his death it may be used in evidence against the estate and the plaintiff may testify. The court said, at page 489:

"Excluding the evidence which may be incompetent, sufficient remains to sustain the judgment against the executrices. The deposition of Gibson taken in the case before trial under section 2055 of the Code of Civil Procedure, was introduced, and the transcript of his testimony taken in the *Leavitt* v. *Gibson* action was introduced herein pursuant to stipulation. Said deposition and transcript in themselves provide damaging evidence against Gibson. Furthermore, there is some authority that the adverse party may render himself competent by introducing the deposition of the decedent taken before his death."

We hold that when the deposition of a party is taken before his death the deposition may be used against his estate. From the deposition it is clear that Howard had knowledge of the Sweet-Markwart agreement. From Sweet's testimony it is equally clear that the bank, too, had knowledge of it. Under such circumstances it would be inequitable for the assignees to get the benefit of Sweet's services without assuming the burdens of the Sweet-Markwart agreement. (*Smith* v. *Barnard*, 148 N.Y. 420 [42 N.E. 1054].)

 We also think it was error to enter judgment in favor

of the American Trust Company on the fifth count which was an oral contract. The letter of April 11, 1947, from Howard to Sweet could be construed as terminating the Sweet-Markwart agreement. If so, Sweet, as of April 30, 1947, was not obligated to continue in the employ of the company. The only cause of action Sweet would have had at that time was a cause of action for breach of contract against Markwart. If we may assume that no contract then existed Sweet could enter into a new contract for his services. After the assignment Sweet was concerned with his future. He, in the company of Howard, went to Hammond's office where he discussed the largest of the six executory contracts for the manufacture and installation of the engine cleaning equipment. Hammond was interested in ascertaining the amount of profit that would accrue if the contract was completed. This was discussed, as was Sweet's agreement with Markwart generally. Sweet testified that Hammond told him to go ahead and he would get his 40 per cent. We think that these facts are sufficient to indicate that a contract was entered into between Sweet and the bank. ■ The law will construe an agreement so as to carry into effect the reasonable intentions of the parties if their intent can be ascertained. (*Roy* v. *Salisbury,* 21 Cal.2d 176 [130 P.2d 706].) ■ From the testimony of Sweet one may infer that Hammond and Sweet discussed the method of cost allocation which Sweet's agreement with Markwart provided; that after Hammond went over the cost analysis of one contract he was satisfied with the arrangement; that it was understood that Sweet would get 40 per cent of the net profits if he remained and supervised the completion of the six contracts. This construction may be given the conversation when we consider that Sweet was apparently the one man in the Markwart organization who could supervise the completion of the six contracts and when we consider that the bank was interested in salvaging as much as possible from the business to apply to the unsatisfied loans. Under such a construction the contract is between the bank and Sweet, and the bank is not a guarantor of the Sweet-Markwart agreement. The terms of the contract are sufficiently definite to be enforced.

■ The bank contends that the complaint must fail because it alleges that a joint contract was entered into between Sweet, Howard, and the bank, and the testimony at most proves a contract between Sweet and the bank. We do not think that the proof only shows a contract between Sweet

and the bank, but if it did it would be an immaterial variance between the pleading and the proof. The bank offered testimony that no conversation between Sweet and Hammond ever took place. By offering such testimony the bank could not have been misled to its prejudice. In such a case a variance between the pleading and the proof becomes immaterial. (*Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580] ; *Rubin* v. *Platt Music Co.*, 92 Cal.App. 203 [268 P. 396].)

We are of the opinion, however, that the evidence produced was sufficient to prove a joint contract. Howard, Hammond and Sweet were all present at this conversation. Sweet had prepared a cost analysis of one job to show the profit that would be obtained if one job were completed. Hammond did most of the talking although the discussion was with the others. There was also evidence that the bank kept a close check on Howard and that he could not disburse funds without the bank's approval. Under such circumstances we think that one may infer that the purpose of the conference was to clear up Sweet's status and when Hammond told Sweet that he would get his 40 per cent he was speaking for Howard also.

The bank contends that the contract as proved was barred by the statute of limitations. The complaint alleged that an oral contract was entered into on or about May 7, 1947. Sweet attempted to prove conversations with other bank officials but he could not do so because he was unable to establish that these other officials were authorized to act for the bank at the time of the purported conversations. Sweet was then allowed to introduce testimony of the conversation with Hammond on or about May 15, 1947. The complaint was then amended to show that the contract was entered into on or about May 15, 1947. It is the bank's contention that proof of the contract of May 15, 1947, was proof of a contract different from that pleaded and therefore it was barred by the statute of limitations. We do not agree. The amendment did not substitute an entirely new cause of action. There was no attempt to prove a wholly different legal liability or obligation from that originally stated. In such a case an amendment is proper and the statute would not run. (*Klopstock* v. *Superior Court*, 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318].)

The bank also contends that if there was a contract there was no consideration for it. The bank contends that since Sweet was under a salary arrangement with Howard and since Sweet's duties were to supervise the completion of the contracts there was no consideration for the new agree-

ment. We do not think that the Howard-Sweet arrangement necessarily must be construed as obligating Sweet to continue until the contracts were completed. It was at most a hiring the term of which was measured by the method adopted for payment of the salary. If Sweet agreed with the bank to stay he would be bound and there would be consideration for the agreement. The bank also contends that Sweet did not agree to stay and complete the job at the time of the agreement with Hammond. We think that it may be inferred that even if that matter was not expressly discussed this was the whole tenor of the conversation between the parties. The bank also contends that if any contract was entered into it was merely a contract of guarantee because Sweet was obligated under the Sweet-Markwart agreement. This argument overlooks the fact that there was evidence that the agreement had been terminated by Howard.

We are also of the opinion that it was error to exclude proof of the conversation between Hammond, Howard and Sweet in the action against the estate. In his deposition Howard denied that any such conversation took place. This deposition was introduced in evidence. In *Coble* v. *McClintock*, 10 Ind.App. 562 [38 N.E. 74], the court said at page 75: "We think, when it is made to appear that the decedent has testified in a manner known to the law, and that his testimony is available to his estate, the reason for closing the mouth of the living party has ceased to exist, and when the reason ceases the rule should cease also." (See also annotation, 158 A.L.R. 306.) Under such circumstances there is no advantage to the adverse party by permitting him to testify against the estate as to matters denied by the decedent because the denial of the decedent is available to the estate. We think that the evidence produced against the bank should have been permitted against the estate and if introduced would have proved the oral contract against the estate of Howard.

Markwart has not filed a brief in this matter. It is clear that Sweet would have a cause of action against Markwart for breach of contract to share in the profits of certain contracts which had been obtained.

Appellant has asked this court to order the verdict of the jury entered if this court reverses the case. We cannot pass on the question whether the verdict should have been received despite the fact that one juror died after the jury had arrived at its verdict. If the verdict had been received, this court

could pass on the question presented, and, if this court were to decide that the verdict had been properly rendered, it could, on reversing the judgments, order that judgment based on the verdict of the jury be entered. However, where a verdict is not received or entered as the verdict of the jury, an appellate court may not order the entry of judgment based on it. (*Crowe* v. *Sacks,* 44 Cal.2d 590, 599 [283 P.2d 689].)

The judgments are reversed.

Peek, J., and Warne, J. pro tem.,* concurred.

The petitions of appellant and of respondents Helen H. Howard, as Executrix, etc., and American Trust Co. for a hearing by the Supreme Court were denied May 21, 1958.

*Assigned by Chairman of Judicial Council.